' HIGGINBOTHAM, J.
UThe defendant, .Donald Dickerson, was charged by bill of information with second degree battery, a violation of La. R.S. 14:34.1. He pled not guilty and, following a jury trial, was found guilty as charged. The State subsequently filed a habitual offender bill of information; following a hearing on the matter, the defendant was adjudicated a fourth-felony habitual offender and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[1] The defendant filed a motion to reconsider sen- *637 fence, which was denied. The defendant now appeals, designating two assignments of error.
FACTS
On May 12, 2013, at about 9:00 p.m., David L.! Ray, III, drove to the Memorial Stadium Chevron gas station on Scenic Highway for gas. David’s wife and two daughters were in the vehicle. The card-swipe did not work at his gas pump, so David stood in the line outside to pay for the gas at the cashier window. (The store’s doors had already been locked for the night). As David was standing in line, the defendant approached David, pushed him, said something to him about the pink shirt he was wearing, and told him that he was in the wrong neighborhood. After the defendant and David exchanged words, David stopped talking and turned away, trying to avoid any contact with the defendant. The defendant then punched David in the face, causing him to briefly lose consciousness.
• The defendant struck David several more times while he was either lying on the ground or trying to get up. David’s wife, Angela, exited the vehicle and ran to her husband. Two people who had ridden to the gas station with the defendant, Ashley Simmons and Devin Bessye, approached Angela. While Angela was tending to David and telling the defendant to leave him alone, Devin struck Angela in the | ahead, knocking her unconscious. Ashley then got on top, of Angela and began punching her. C.R.',[2] David’s older teenaged daughter, ran to her mother and tackled Ashley. While C.R, and Ashley fought, someone (likely Devin) punched C.R. in the jaw.
Several patrons at the gas station intervened and broke up the attacks on the Ray family. The defendant, Ashley, and Devin got in a white Jeep Cherokee and left the scene. Latasha Henderson, one of the patrons who witnessed the attacks, followed the defendant and called 911 while in pursuit. The police quickly responded and stopped the defendant around Winbourne Ayenue and North 38th Street.
David suffered serious injuries. He was taken to the emergency room at Baton Rouge General on Bluebonnet, where he was treated by Dr. Keith Schwager. Dr. Schwager testified at trial David had an orbital blowout fracture and a hematoma (bleeding and swelling) behind that injured eyeball. He also had a nasal bone fracture and received ten stitches to his face. David was transferred to Our Lady of the Lake Hospital for specialized treatment by an ophthalmologist and a plastic surgeon. Because his orbital socket was completely fractured, doctors inserted a titanium plate behind his eye. According to David, his injured eye is now two millimeters more recessed in his skull, which causes his eyelid to open wider than it normally would, increasing sensitivity to light.
The defendant did not testify at trial.
ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues that the evidence was insufficient to support the second degree battery conviction. Specifically, the defendant contends the State did not prove that he had the specific intent to inflict | ¿serious bodily injury. The defendant does not dispute that David suffered serious bodily injury.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. The standard of review for the sufficiency of the evidence to up *638 hold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. Code Crim. P. art. 821(B); State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the factfinder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 2001-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
La. R.S. 14:34.1 provides in pertinent part, with footnote added:
A. Second degree battery is a battery[3] when the offender intentionally inflicts serious bodily injury ....
B. For purposes of this Section, ... “[sjerious bodily injury” means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
In order to prove a second degree battery, the State must prove the defendant: (1) committed a battery upon another, (2) without his consent, and (3) intentionally inflicted serious bodily injury. State v. Young, 2000-1437 (La. 11/28/01), 800 So.2d 847, 852. Second degree battery is a crime requiring specific criminal intent. State v. Fuller, 414 So.2d 306, 310 (La. 1982). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. State v. Cousan, 94-2503 (La. 11/25/96), 684 So.2d 382, 390. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of defendant. State v. Graham, 420 So.2d 1126, 1127 (La. 1982). The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. McCue, 484 So.2d 889, 892 (La. App. 1st Cir. 1986).
In brief, the defendant maintains that the “single blow” that knocked David unconscious and caused the blowout fracture is not evidence sufficient to prove, beyond a reasonable doubt, that he had the specific intent to cause serious bodily injury. According to the defendant, while “it is unfortunate that the punch” caused such harm, “the fact is that proof that one male punched another male of similar build is not evidence of specific intent to cause serious bodily injury.”
We note initially that there is no requirement that a victim be hit multiple times to satisfy the elements of second degree battery. As the second circuit opined in State v. Diaz, 612 So.2d 1019, 1022 (La. App. 2d Cir. 1993), after the defendant made much of the fact that he had only struck the victim once:
The supreme court has firmly rejected the notion that the second degree battery Statute envisions an offender who mercilessly beats a fallen victim.... The *639 Statute clearly states that the intended harm is “serious bodily injury” and defines this to involve, among other things, unconsciousness, extreme physical pain or protracted and obvious disfigurement. Under the circumstances of this case, when Diaz struck Bullock as hard as he could, he intended to cause serious bodily injury as contemplated by the Statute. [Citation omitted.]
More importantly, however, the testimonial evidence from eyewitnesses in this case established the defendant hit David multiple times. Doris Ward, the cashier at the Chevron station, testified that she did not know who was throwing the punches, I «but that she could “see a guy getting beat.” She saw David “kind of like covering his face, shattering [sic] the punches.” She further indicated that she never saw David throw any punches, but she “could see punches being thrown.”
Latasha Henderson had stopped at the Chevron station to get gas. Latasha testified at trial that she saw the defendant and David exchanging words. The defendant then punched David “very hard and knocked him, like, off of his foot.” Latasha then started walking toward the two men and hoped that someone would stop what was going on. Latasha then testified:
And at this time it’s like—well, somebody was trying—somebody did come and try to help to stop, but I guess—the guy in the red shirt [the defendant], he was just doing so much to—beating the man so bad so the person who tried to stop him, they just like, I’m just going to leave this alone because I’m not going to get into it.
Dan Williams, Jr. was at the Chevron station with his three-year-old son and his brother-in-law, Jamichael Williams. Dan was in the line to pay, standing directly behind David. The defendant and David were arguing. The defendant then hit David, who feil into Dan. Dan gave his son to Jamichael, who took the boy to their car. At trial, Dan testified that the “guy with the dreads” and the red shirt, who he identified as the defendant, steadily and forcefully kept trying to fight and was throwing punches at David “[r]eally trying to hurt something.” At some point, Dan grabbed the defendant, because David was “on the ground almost pretty much lifeless. He don’t [sic] have no more fight in him.... So I felt like it was my duty to stop him.” On cross-examination, Dan explained how the defendant struck David several times, stating: “it was like multiple hits. But from the look of it, you would think it was just one hit” because the defendant hit David and “he was out,” but the defendant followed with more punches while David was down on the ground.
Jamichael Williams also identified the defendant in court at trial. He testified that when he was in line with Dan, he saw the defendant hit David hard two times. | vJamichael brought Dan’s son to the car. According to Jamichael, as David was trying to get up, the defendant hit David five or six more times.
David himself testified that the defendant “crushed” him when they were standing in line. When asked how many times the defendant hit him, David said he had no idea, but that he “had multiple breaks, so he had to hit me more than once.” In any event, whether the defendant’s first punch, which caused the defendant to buckle and fall into Dan, or whether the defendant’s subsequent punches caused the severe damage to David’s eye, a rational juror could have reasonably concluded the defendant had the specific intent to inflict serious bodily injury on David. See State v. Hager, 2013-546 (La. App. 5th Cir. 12/27/13), 131 So.3d 1090, 1093; State v. Landry, 2003-1671 (La. App. 4th Cir. 3/31/04), 871 So.2d 1235, 1239; State v *640 Johnson, 602 So.2d 310, 312 (La. App. 1st Cir. 1992). Dan’s testimony about how the defendant continued to beat a man who was already down was particularly relevant regarding intent.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact’s determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder’s determination of guilt. State v. Taylor, 97-2261 (La. App. 1st Cir. 9/26/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a “thirteenth juror” in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La. App. 1st Cir. 1985). In the absence of internal contradiction |sor irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). Further, the testimony of the victim alone is sufficient to prove the elements of the offense. State v. Orgeron, 512 So.2d 467, 469 (La. App. 1st Cir. 1987), writ denied, 519 So.2d 113 (La. 1988).
When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987). The undisputed testimony was that the defendant, without warning, punched David in the face so hard that he was likely unconscious before he hit the ground, and he continued to strike David while he was down. The jury’s guilty verdict reflected the reasonable conclusion that, based on the defendant’s actions and especially in light of David’s injuries, including an orbital blowout fracture, a hematoma behind the eye, and a nasal bone fracture, the defendant intended to cause, and in fact did cause, serious bodily injury to David. In finding the defendant guilty, the jury clearly rejected the defense’s theory of innocence. See Moten, 510 So.2d at 61.
After a thorough review of the record, we find that the evidence supports the guilty verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of second degree battery. See State v. Calloway, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).
This assignment of error is without merit.
{^ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues that his life sentence at hard labor is unconstitutionally excessive. He specifically contends that because no one lost their life in the altercation, a life sentence is disproportionate to the seriousness of the offense.
*641 The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls vsithin statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Andrews, 94-0842 (La. App. 1st Cir. 5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. See State v. Holts, 525 So.2d 1241, 1245 (La. App. 1st Cir. 1988). Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of La. Code of Crim. P. art. 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. State v. Brown, 2002-2231 (La.App. 1 Cir. 5/9/03), 849 So.2d 566, 569.
The articulation of the factual basis for a sentence is the goal of La. Code Crim. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. Code Crim. P. art. 894.1. State v. Lanclos, 419 So.2d 475, 478 (La. 1982). The trial judge Imshould review the defendant’s personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. See State v. Jones, 398 So.2d 1049, 1051-52 (La. 1981). On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another. sentence might have, been more appropriate. State v. Thomas, 98-1144 (La. 10/9/98), 719 So.2d 49, 50 (per curiam).
The defendant argues in his brief that, despite all of his convictions being crimes of violence (the instant and three predicates), his life sentence at hard labor is unconstitutional. The defendant notes that his instant conviction did not result in anyone’s death, and he suggests that life imprisonment “is clearly a sentence that is so disproportionate as to shock one’s sense of justice.”
The defendant’s life sentence under the habitual offender Statute was mandatory. See La. R.S. 15:529.1(A)(4)(b). In State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993), the Louisiana Supreme Court opined that if a trial judge were to find that the punishment mandated by La. R.S. 15:529.1 makes no “measurable contribution to acceptable goals of punishment” or that the sentence amounted . to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity, of the crime,” he has the option, indeed the duty, to reduce such sentence to one that would not, be constitutionally excessive. In State v. Johnson, 97-1906 (La. 3/4/98), 709 So.2d 672, 676-77, the Louisiana Supreme Court reexamined the issue of when Dorthey permits a downward departure from the mandatory minimum sentences in the Habitual Offender, Law.
While the trial court provided a very considered account (addressed below) of why it was imposing the life sen *642 tence, there is no need for the trial court to justify a sentence under La. Code Crim. P. art. 894.1 when it is legally required to impose that sentence. As such, the failure to articulate reasons as set forth in Article 894.1 Inwhen imposing a mandatory life sentence is not an error; articulating such reasons or factors would be an exercise in futility since the court has no discretion. State v. Felder, 2000-2887 (La.App. 1 Cir. 9/28/01), 809 So.2d 360, 371, writ denied, 2001-3027 (La. 10/25/02), 827 So.2d 1173. See also State v. Ditcharo, 98-1374 (La. App. 5th Cir. 7/27/99), 739 So.2d 957, 972, writ denied, 99-2551 (La. 2/18/00), 754 So.2d 964; State v. Jones, 31,613 (La.App. 2 Cir. 4/1/99), 733 So.2d 127, 146, writ denied, 99-1185 (La. 10/1/99), 748 So.2d 434; State v. Williams, 445 So.2d 1264, 1269 (La. App. 3d Cir.), writ denied, 449 So.2d 1346 (La. 1984).
Mandatory sentences have been repeatedly upheld as constitutional and consistent with the federal and state constitutional provisions prohibiting cruel, unusual or excessive punishment. See State v. Jones, 46,758 (La.App. 2 Cir. 12/14/11), 81 So.3d 236, 249, writ denied, 2012-0147 (La. 5/4/12), 88 So.3d 462. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Johnson, 709 So.2d at 676.
While not required, as discussed, the trial court thoroughly considered La. Code Crim. P. art. 894.1, including the defendant’s personal and criminal history, in imposing a life sentence:
THE COURT: Okay. All right.
Mr. Dickerson, you are here for sentencing today. You were found guilty of the offense of second-degree battery. I have ordered a pre-sentence report in this case. I have reviewed that pre-sen-tence report in its entirety.
You are here for sentencing as a fourth-felony offender, with the three prior felonies being crimes of violence. However, I have considered the pre-sentence report.
hid have considered] your Statement that’s contained in the pre-sentence report where you say you’re sorry that this happens, but you don’t really take full responsibility for your actions in this case as pointed out by the Office of Probation and Parole.
I have considered the victim impact Statement. Your conduct, by definition, caused serious bodily injury to the victim in this case. It continues to cause physical problems and also—not just for him, but also his family issues based on your actions in this case.
I have considered your juvenile record, which is extensive. I have considered your prior criminal history. Other than what I’ve heard here today, which shows the three prior convictions of purse snatching, armed robbery, and simple robbery, all crimes of violence, you also have a conviction, a felony conviction, according to the pre-sentence report, for a carnal knowledge of a juvenile which you were sentenced to four years in the—in DOC. That arrest occurring in 1991. I’m also aware now of the federal conviction, which you have also, sir.
All of those, including the conviction which you’re here for sentencing, is six felony convictions, which is an astounding number of convictions.
*643 I have taken into account your history, as I’ve stated, as a juvenile. I’ve considered your social history, having been raised in Baton Rouge, oldest of two children. Your parents were divorced when you were very young. You did grow up in East Baton Rouge. You attended the public school system, but you were suspended in middle school for fighting. You have an extensive history of crimes against a person and crimes of violence.
I’ve taken into account the method in which you grew up contained in the pre-sentence report. You did, to your credit, obtain a GED while in the Department of Corrections. You are married with no children, and I have considered the social history contained in the pre-sen-tence report.
I’ve considered the recommendation from the Office of Probation and Parole. As Probation and Parole says, you have a significant criminal and violent history.
In considering the sentencing guidelines of Code of Criminal Procedure Article 894, this Court has taken into consideration all of the factors under Code of Criminal Procedure Article 894, and the Court finds that any lesser sentence than the one I’m about to impose would deprecate the seriousness of this offense, and that you are in need of custodial or a correctional environment best served by a commitment to an institution.
You caused serious bodily injury to another person, sir. It was needless and senseless.
l1PYour record, your criminal history shows that you are basically the definition of what a career criminal and violent offender is. You are the reason we have a Habitual Offender Statute. Habitual Offender Statute is to protect the citizens of this state from the most dangerous and violent criminals, and you have proven yourself to be exactly that and that is the purpose of this Statute and that is the reason for the sentence that you will receive in this case.
Your conduct in this case has caused many of the good citizens of our community to be fearful; fearful to simply perform or run an ordinary, every-day life errand, and that is ashame [sic], And apparently that’s what a lot of people will remember about your actions in this case.
However, what I choose to remember, and what I hope most people will remember, is the care and the aid given by the good citizens of this community to the victim in this case, and his family, along with their aid in the solving of this crime. Your actions have done nothing but caused a very, very severe mark, bad mark on our community, sir, which makes people around the country think less of our community, and that is as-hame [sic] because it is a good community. And it is more aptly reflected by the actions of the other people out at that gas station other than you.
The Court has taken into account your actions in this case, which I do find to be very egregious. You played a major role in the commission of this offense. I’ve taken into account your age, educational level, work history, social history, criminal history. This is a mandatory sentence, and it is one that you deserve based on your actions in this case and your prior criminal history.
We agree with the trial court’s assessment and see no reason to disturb the imposition of a life sentence. There is nothing particularly unusual about the defendant’s circumstances that would justify a downward departure from the mandatory sentence under La. R.S. 15:529.1(A)(4)(b). The record before us clearly established an *644 adequate factual basis for the sentence imposed/ We note as well that, despite the defendant’s' assertion in brief that his instant conviction did not result in anyone’s death, the defendant is not being sentenced to life for. second degree battery conviction, alone. Rather, under the Habitual Offender- Law, the defendant, a recidivist with multiple felony convictions, :in~ eluding purse snatching, simple robbery, and armed robbery, is being punished for .the. instant crime in light of his continuing disregard for the laws of our State. See Johnson, 709 So.2d at 676-77.
InThe defendant has not proven by clear and convincing evidence that he is exceptional such that a mandatory life sentence would not be meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. See Johnson, 709 So.2d at 676. Accordingly, no downward departure from the presumptively constitutional mandatory life sentence is warranted. The sentence imposed is not grossly disproportionate to the - severity of the offense and, therefore, is not unconstitutionally excessive.
This assignment of error is without merit.
DECREE
For the stated reasons, we affirm the defendant’s conviction, habitual offender adjudication, and sentence.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.

. The defendant has prior convictions for purse snatching, armed robbery, and simple robbery.

. Minor victims of offenses are referred to by their initials. See La. R.S. 46:1844(W).

. Battery is the intentional use of force or violence upon the person of another. La. R.S. 14:33.