BROWN, C.J.
Defendant, Timothy Delee Scheanette, was convicted of second degree battery and second degree kidnapping. For the battery, defendant was sentenced to four and one-half years at hard labor and ordered to pay a fine of $2,000 plus court costs, or serve 180 days in default thereof. For the kidnapping, defendant was sentenced to 15 years at hard labor, with all but four and one-half years suspended. The sentences were ordered to be served concurrently. Defendant has appealed. For the reasons set forth below, defendant's convictions and sentences are affirmed.
PROCEDURAL BACKGROUND
Defendant was charged by bill of information with second degree battery and second degree kidnapping that occurred on August 29, 2015, in Monroe, Louisiana. After an extensive on-record discussion, *720 the trial court granted defendant's motion to represent himself. Defendant waived his right to a jury trial and filed notice of his intent to present an intoxication defense. Following a bench trial, on January 23, 2017, the trial judge found defendant guilty as charged on both counts.
Defendant filed numerous post-trial motions, which were either withdrawn or denied at a hearing on April 13, 2017. Thereafter, the trial judge reviewed the pre-sentence investigation report, and sentenced defendant to four and one-half years at hard labor for second degree battery. For second degree kidnapping, defendant was sentenced to 15 years at hard labor, with all but four and one-half years suspended, with the four and one-half years to be served without the benefit of parole. Defendant was thereafter to be placed on supervised probation for five years. The trial judge ordered the sentences to be served concurrently. Further, for second degree battery, the trial judge ordered Scheanette to pay a fine of $2,000 plus court costs, in default of which he was to serve 180 days in jail, with the fine and costs to be paid within two years once he is on probation. The trial court denied defendant's motion to reconsider sentence. This appeal followed, and appellate counsel was appointed.
DISCUSSION
Sufficiency of the Evidence
Defense counsel contends that the evidence was insufficient to prove that defendant was guilty of either second degree battery or second degree kidnapping. As to the battery, defense counsel argues that there was no evidence that defendant intentionally inflicted serious bodily injury on the victim. Noting that defendant struck the victim only once, not repeatedly, defense counsel asserts that there was only evidence of an alleged intent to commit a simple battery. As to the kidnapping, defense counsel claims that there was no evidence that defendant caused physical injury to the victim while he was allegedly kidnapping her. Rather, defense counsel argues that at best, the evidence established that defendant battered the victim, and then kidnapped her after the battery was completed.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 01-1658 (La. 05/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 05-0477 (La. 02/22/06), 922 So.2d 517.
A reviewing court accords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Casaday , 49,679 (La. App. 2 Cir. 02/27/15), 162 So.3d 578, writ denied , 15-0607 (La. 02/05/16), 186 So.3d 1162. The testimony of a victim alone is sufficient to convict a defendant. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. McGill , 50,994 (La. App. 2 Cir. 01/11/17), 213 So.3d 1181.
At trial, the court was presented with the following testimony and evidence. The victim, Courtni McDonald, testified that on August 29, 2015, she was living with defendant *721 at her house, along with their eight-month-old daughter. On that date, there were some men doing work on their house. Ms. McDonald, defendant, and their daughter left the house and went to Fred's Pharmacy Store. When they left the store, defendant was driving and Ms. McDonald and the baby were in the backseat. Defendant had been drinking that day. He had the music on loud, and Ms. McDonald asked him to turn it down. She eventually reached up and turned it off. Ms. McDonald testified that defendant then said that another guy had been flirting with her and "whispering in her ear." Defendant got angry and began driving recklessly. On their way home, defendant stopped at a gas station to buy beer. Ms. McDonald got out of the car with the baby, and asked the store clerk to call the police because defendant was driving erratically. The store clerk would not do so. Defendant got angry when Ms. McDonald refused to ride with him, and he left Ms. McDonald and the baby at the gas station. About 30 minutes later, defendant returned and Ms. McDonald agreed to drive them home.
As Ms. McDonald was driving, defendant was sitting in the passenger seat. Defendant got mad that Ms. McDonald had wanted the store clerk to call the police. Ms. McDonald testified that defendant then punched her in the face, under her right eye, hard enough to split her skin open. Ms. McDonald was bleeding profusely and had to stop the car. She got in the passenger seat and asked defendant to take her to the hospital at least two or three times. Defendant refused to take her to the hospital, stating that he did not want to go to jail, and began driving toward their house. However, when they got close to their house, Ms. McDonald was covered in blood and there were people outside, so defendant kept driving. Ms. McDonald told defendant to take her home, but he refused. He drove around the neighborhood for a little while and then said that they were going to his mother's house, which was close by. As defendant drove past his mother's house, Ms. McDonald asked him where they were going. Defendant said that he was going to take her to the woods and kill her.
Ms. McDonald testified that defendant did not let her out of the car. As they approached a stop sign, Ms. McDonald unbuckled her seat belt and attempted to get out, but defendant turned the corner too fast. When they approached a second stop sign, defendant had to stop for traffic, and Ms. McDonald was able to jump out of the car. She started walking to defendant's mother's house, but defendant passed her and made it to his mother's house before she did. As Ms. McDonald walked up, defendant's mother saw Ms. McDonald's face and said that she was going to call the police. Defendant's mother got the baby out of the car, and everyone went inside the house. Ms. McDonald took the baby to the back of the house, and defendant wrestled his mother to the floor and grabbed the phone from her hand, apparently after she had connected with 911. The altercation continued into the bedroom, where defendant pushed Ms. McDonald onto the bed.[1] When the police arrived, about 30 minutes later, defendant forced Ms. McDonald into the bathroom and demanded that she clean her face and change shirts, in an attempt to hide her injury from them.
Ms. McDonald stated that after she talked to the police, and they took pictures of her injuries, they called an ambulance and she went to the hospital. Ms. McDonald had to get four or five stitches and still has a scar on her face. Ms. McDonald *722 identified the photos of her injury taken right after the incident, showing the blood dripping down her face, and several photos she took the next day, showing the stitches and a large area under her right eye that was bruised and swollen.
Defendant's mother, Connie Scheanette, testified that when defendant and Ms. McDonald arrived at her house, and she saw the blood on Ms. McDonald's face, she grabbed the phone to call the police. Defendant was angry and took the phone away from her, knocked her down, and a struggle ensued. Mrs. Scheanette did not see defendant push Ms. McDonald, but stated that they went into the bedroom. Mrs. Scheanette stated that she could smell alcohol on defendant's breath and noted that he has a drinking problem. A couple of days after defendant's arrest, Ms. McDonald told her that there had been no kidnapping, that she and defendant had been out shopping.
Deputy Steven Daniel May of the Ouachita Parish Sheriff's Office testified that he was dispatched to Connie Scheanette's house on August 29, 2015, at 1:47 p.m. in response to a 911 call hang-up. The homeowner was at the front door. When he went inside the house, defendant and Ms. McDonald were coming out of a back bedroom. Deputy May observed Ms. McDonald's injury and learned that defendant had struck her in the face. Defendant was arrested, and Ms. McDonald was transported to the hospital by ambulance. Deputy May stated that although he could tell that defendant had been drinking, he was not significantly intoxicated; defendant could hold a conversation and did not have any trouble walking. Deputy May took photos of the following: the victim's injury; the car, which showed blood on the console, steering wheel and driver's seat; the beer that was found inside the car; and the inside of the house, which was in disarray.[2]
Second Degree Battery
A battery is the intentional use of force or violence upon the person of another. La. R.S. 14:33. Second degree battery is defined as "a battery when the offender intentionally inflicts serious bodily injury." La. R.S. 14:34.1(A). "Serious bodily injury" is defined as "bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death." La. R.S. 14:34.1(B)(3).
Second degree battery is a specific intent crime and therefore, the evidence must show that the defendant intended to inflict serious bodily injury. State v. Fuller , 414 So.2d 306 (La. 1982) ; State v. Linnear , 44,830 (La. App. 2 Cir. 12/09/09), 26 So.3d 303. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of this determination is to be guided by the standards of Jackson v. Virginia , supra ; State v. Linnear , supra ; State v. Jackson , 51,575 (La. App. 2 Cir. 09/27/17), 244 So.3d 764, 2017 WL 4273705.
There is no requirement that a victim be hit multiple times to satisfy the *723 elements of second degree battery. State v. Dickerson , 16-1336 (La. App. 1 Cir. 04/12/17), 218 So.3d 633. The Louisiana Supreme Court has firmly rejected the notion that the second degree battery statute envisions an offender who mercilessly beats a fallen victim. State v. Fuller , supra ; State v. Diaz , 612 So.2d 1019 (La. App. 2 Cir. 1993).
As to second degree battery, Ms. McDonald testified that while she was driving, defendant punched her in the face under her right eye. Defendant struck Ms. McDonald hard enough to split her skin open, causing her to bleed profusely. Ms. McDonald had to get four or five stitches, and the area under her eye was bruised and swollen the next day. The injury caused "extreme physical pain" and resulted in a permanent scar on Ms. McDonald's face. The manner in which defendant hit Ms. McDonald, the severity of her injury, and defendant's actions in refusing to take Ms. McDonald to the hospital, together with his statement that he was going to take her to the woods to kill her, all support a finding that defendant intended to inflict serious bodily injury. Although defense counsel asserts that defendant only struck McDonald once, there is no requirement that a victim be hit multiple times to satisfy the elements of second degree battery. See State v. Dickerson , supra. The trial judge reasonably found that defendant intentionally inflicted serious bodily injury on Ms. McDonald.
Second Degree Kidnapping
La. R.S. 14:44.1 defines second degree kidnapping as follows:
(A). Second degree kidnapping is the doing of any of the acts listed in Subsection (B) wherein the victim is:
...
(3) Physically injured or sexually abused;
...
(B). For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
The provisions of this statute apply when any one occurrence mentioned in Subsection (B) combines with any occurrence enumerated in Subsection (A). State v. Pamilton , 43,112 (La. App. 2 Cir. 03/19/08), 979 So.2d 648, writ denied , 08-1381 (La. 02/13/09), 999 So.2d 1145, rehearing denied and opinion modified , 10-0273 (La. 02/04/11), 56 So.3d 986.
Further, as to second degree kidnapping, the evidence was sufficient to prove that defendant forcibly seized and carried Ms. McDonald from one place to another, or imprisoned her, while she was physically injured. After he hit Ms. McDonald in the face and she could no longer drive, defendant refused Ms. McDonald's requests for him to take her to the hospital or home. Defendant continued driving around, passing their house and his mother's home, and told Ms. McDonald that he was going to take her to the woods to kill her. Ms. McDonald had to jump from the moving car to escape from defendant. Thereafter, defendant forced Ms. McDonald into the bathroom at his mother's house and prevented her from exiting until she cleaned her face and changed shirts before speaking to responding officers. Although the injury occurred before the acts constituting the kidnapping, the injury facilitated the forcible seizing and carrying and the imprisonment, and was an integral part of the incident.
*724 Considering the evidence in a light most favorable to the prosecution, the evidence was sufficient for the trial judge to conclude beyond a reasonable doubt that defendant was guilty of second degree battery and second degree kidnapping. This assignment of error is without merit.
Denial of Pro Se Motion in Arrest of Judgment .
Following his bench trial, defendant filed an amended motion in arrest of judgment, arguing that the bill of information was fatally defective as to the charge of second degree kidnapping, as it failed to state which portion of La. R.S. 14:44.1(A) (i.e. that the victim was physically injured) he allegedly violated. The trial court denied the motion, stating that defendant had sufficient notice of the allegations regarding the injury to the victim as the bill also charged him with second degree battery, and he was provided with open-file discovery.
Regarding the charge of second degree kidnapping, the bill of information states that on August 29, 2015, defendant:
DID WILLFULLY, UNLAWFULLY AND INTENTIONALLY FORCIBLY SEIZE AND CARRY COURTNI MCDONALD FROM ONE PLACE TO ANOTHER, OR ENTICE OR PERSUADE COURTNI MCDONALD TO GO FROM ONE PLACE TO ANOTHER OR IMPRISON THIS PERSON OR FORCIBLY SECRET THIS PERSON IN VIOLATION OF R.S. 14:44.1
La. C. Cr. P. art. 859 provides that the court shall arrest the judgment only when the indictment is substantially defective because an essential averment is omitted.
La. Const. art. I, § 13 provides that an accused shall be informed of the nature and cause of the accusation against him. La. C. Cr. P. art. 464 provides that the indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. The bill of information must contain all the elements of the crime intended to be charged in sufficient particularity to allow the defendant to prepare for trial, to enable the court to determine the propriety of the evidence that is submitted upon the trial, to impose the appropriate penalty on a guilty verdict, and to protect the defendant from double jeopardy. State v. Washington , 41,182 (La. App. 2 Cir. 09/01/06), 939 So.2d 557, writs denied , 06-2320, 062468 (La. 05/18/07), 957 So.2d 148, 149.
The time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars. State v. Draughn , 05-1825 (La. 01/17/07), 950 So.2d 583, cert. denied , 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). A post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. Id. ; State v. Jones , 49,948 (La. App. 2 Cir. 09/30/15), 178 So.3d 1075.
Although defendant filed a motion to quash prior to trial, that motion did not allege that the bill of information failed to state which portion of La. R.S. 14:44.1(A) that he allegedly violated. As such, defendant has arguably waived any claim based on the allegedly defective bill of information. Nevertheless, the record establishes that defendant had full knowledge of the nature of the charges against him. As noted above, the crime of second degree kidnapping required the state to prove one of the acts in Subsection (A) and one of the acts in Subsection (B) of La. R.S. 14:44.1. The bill of information did not specify the particular act under Subsection (A) under which defendant would be tried.
*725 However, the only subsection that could apply in this case was La. R.S. 14:44.1(A)(3), wherein the victim was "physically injured or sexually abused," and defendant was well aware that the state was proceeding under that portion of Subsection (A). Defendant was provided with open-file discovery, and at the preliminary examination, at which defendant was present, the trial judge found that there was probable cause for the second degree kidnapping charge, specifically noting La. R.S. 14:44.1(A)(3), the "physical injury" provision. Further, defendant has not claimed that the omission in the bill of information prejudiced his defense in any way. Therefore, although the bill of information did not allege that the victim was "physically injured," defendant was sufficiently informed of the second degree kidnapping charge against him and was not prejudiced by any defect in the bill of information at trial. This assignment of error is without merit.
Error Patent Review
The trial court imposed an illegally lenient sentence for defendant's second degree kidnapping conviction. La. C. Cr. P. art. 893(A) provides that the court shall not suspend the sentence for certain crimes of violence, including second degree kidnapping.
La. C. Cr. P. art. 882(A) states that an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. This Court's authority to correct an illegally lenient sentence is permissive, not mandatory. In this case, neither the state nor the defense has objected to the sentence imposed by the trial court. Since this Court is not required to take action, the state has not objected to the error, and defendant is not prejudiced by the sentence, this Court declines to correct the illegally lenient sentence. See State v. Weldon , 13-285 (La. App. 3 Cir. 10/23/13), 161 So.3d 18
CONCLUSION
For the foregoing reasons, defendant's convictions and sentences are affirmed.

The baby was not injured during this incident.

Deputy Zach Johnson of the Ouachita Parish Sheriff's Office testified as to his limited involvement as the backup officer in this case.