**NOT DESIGNATED FOR PUBLICATION**

**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2021 KA 0350**

*P M$_c$ by JEW*

*JEW*

*mrt.*

**STATE OF LOUISIANA**

**VERSUS**

**LARRY PAUL CLAYTON**

Judgment Rendered:    DEC 2 2 2021

* * * * * *

On Appeal from the Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Docket No. 39066

Honorable Robert H. Morrison, III, Judge Presiding

* * * * * *

Scott M. Perrilloux
District Attorney
Brett Sommer
Assistant District Attorney
Livingston, Louisiana

Counsel for Appellee
State of Louisiana


Meghan Harwell Bitoun
New Orleans, Louisiana

Counsel for Defendant/Appellant
Larry Paul Clayton


* * * * * *

**BEFORE:  McCLENDON, WELCH AND THERIOT, JJ.**

**McCLENDON, J.**

Defendant, Larry Paul Clayton, was charged by bill of information with two counts of simple burglary, violations of LSA-R.S. 14:62. He entered a plea of not guilty and, following a jury trial, was found guilty as charged on both counts. For each count, the trial court sentenced defendant to ten years imprisonment at hard labor. The sentences were ordered to run concurrently.[1] Defendant now appeals, designating two assignments of error. We affirm the convictions and sentences.

## FACTS

Jimmy Halford and his wife Wanda lived in a mobile home on Palm Street in Denham Springs. They added a closed-in patio area that was attached to the mobile home. Jimmy also had a 28 x 28 foot shop on his lot. The 2016 flood forced the Halfords to leave their mobile home. They left many of their possessions in the mobile home, the patio area, and the shop, and went to live in Baker, unable to return to the mobile home because of black mold. Because of the flood, Jimmy could not attach the roll-up bay door to the front of his shop.

Defendant's mother lived next door to Jimmy and Wanda's mobile home. Additionally, defendant lived with his mother "on and off." Jimmy often saw defendant there.

On the morning of March 23, 2019, a neighbor contacted Wanda about a refrigerator in the driveway of her mobile home residence. Jimmy and Wanda went to their mobile home. Jimmy testified that his $2,500.00 refrigerator was in his driveway, which a week before, Jimmy had seen in his mobile home. Jimmy called the police, and Deputy Tanner Davison, with the Livingston Parish Sheriff's Office, arrived at the scene. Defendant arrived at the scene shortly thereafter. After Deputy Davison spoke to Jimmy and defendant, it was learned that a dolly hooked up to the refrigerator was owned by defendant. Defendant claimed he was unsure how the dolly got there. Defendant told Deputy Davison that the night before, he had been at his girlfriend's

---

[1] Defendant was resentenced as to these sentences on December 10, 2020. Almost a year prior to this, defendant was sentenced, but the trial court had failed to rule on defendant's motions in arrest of judgment, new trial, and postverdict judgment of acquittal. Accordingly, we remanded this case to the trial court to rule on these motions. At resentencing, the trial court vacated defendant's original sentence, denied the motions, and resentenced defendant.

2

house in Greenwell Springs. One of Jimmy's neighbors, however, testified and also informed Deputy Davison that the night before, on March 22, he had seen defendant's pickup truck at defendant's mother's house. The neighbor saw a man under the carport, but could not tell if it was defendant.

In the meantime, after seeing his refrigerator in his driveway, Jimmy noticed some of his possessions on defendant's mother's property, including his hot-water heater. Jimmy also observed more of his possessions, many of them items from his shop, under defendant's mother's carport.

Defendant told Deputy Davison he knew where some of Jimmy's property was, so Deputy Davison and defendant went to two other houses nearby that contained Jimmy's possessions that he had stored in his patio area, including an air compressor and a cutting torch. Jimmy did not know these neighbors. Defendant told Deputy Davison that he had not been at his mother's residence for several days prior to the instant incident. Deputy Davison testified that defendant told him that he had, prior to all this, seen three individuals taking items from Jimmy's residence. Defendant provided Deputy Davison with three names. Defendant was arrested.

Despite getting some of his property back, Jimmy testified he was still missing most of his property, including over $30,000.00 worth of shop equipment. Jimmy had not given defendant permission to enter his residence or his shop.

Defendant did not testify at trial.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, defendant argues there was insufficient evidence to convict him of the simple burglary of Jimmy's house and the simple burglary of Jimmy's shop. Specifically, defendant contends that his identity as the perpetrator was not established at trial.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; LSA-Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson**

3

**v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See LSA-C.Cr.P. art. 821B; **State v. Ordodi**, 06-0207 (La. 11/29/06), 946 So.2d 654, 660. The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See **State v. Patorno**, 01-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144. Furthermore, where the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. **State v. Cockerham**, 17-0535 (La.App. 1 Cir. 9/21/17), 231 So.3d 698, 703, writ denied, 17-1802 (La. 6/15/18), 245 So.3d 1035.

Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein. LSA-R.S. 14:62A. To be guilty of simple burglary, a defendant must have the specific intent to commit a felony or theft therein at the time of his unauthorized entry. **State v. Godbolt**, 06-0609 (La.App. 1 Cir. 11/3/06), 950 So.2d 727, 730. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Such state of mind can be formed in an instant. **State v. Cousan**, 94-2503 (La. 11/25/96), 684 So.2d 382, 390. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of defendant. **State v. Mickelson**, 12-2539 (La. 9/3/14), 149 So.3d 178, 182-83. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. **State v. Dickerson**, 16-1336 (La.App. 1 Cir. 4/12/17), 218 So.3d 633, 638, writ denied, 17-1147 (La. 8/31/18), 251 So.3d 1062.

The parties to crimes are classified as principals and accessories after the fact. LSA-R.S. 14:23. Principals are all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure

another to commit the crime. LSA-R.S. 14:24. Only those persons who knowingly participate in the planning or execution of a crime are principals. An individual may be convicted as a principal only for those crimes for which he personally has the requisite mental state. **State v. Wright**, 01-0322 (La. 12/4/02), 834 So.2d 974, 983, cert. denied, 540 U.S. 833, 124 S.Ct. 82, 157 L.Ed.2d 62 (2003). The State may prove a defendant guilty by showing that he served as a principal to the crime by aiding and abetting another. **State v. Huey**, 13-1227 (La.App. 1 Cir. 2/18/14), 142 So.3d 27, 30, writ denied, 14-0535 (La. 10/3/14), 149 So.3d 795, cert. denied, 574 U.S. 1198, 135 S.Ct. 1507, 191 L.Ed.2d 443 (2015). Further, when two or more persons embark on a concerted course of action, each person becomes responsible for not only his own acts but also for the acts of the other. See **State v. Smith**, 07-2028 (La. 10/20/09), 23 So.3d 291, 296 (per curiam).

In his brief, defendant avers the evidence did not exclude every reasonable hypothesis of innocence. Defendant notes that no fingerprint or DNA evidence was obtained. He further points out, while conceding it was never confirmed, that he had an alibi, namely that the day before Jimmy's refrigerator was found in the driveway, defendant was at his girlfriend's house. Further, according to the testimony of Deputy Davison, defendant had given him the names of three people whom defendant alleged were involved in taking Jimmy's possessions. Thus, defendant contends, the State's evidence was not sufficient to prove beyond a reasonable doubt that he committed burglary.

While this case lacked direct evidence, such as eyewitness testimony of defendant removing items from Jimmy's house, the circumstantial evidence was strong. The dolly under the refrigerator, which was taken from Jimmy's kitchen and left in the driveway, belonged to defendant. Wanda Halford testified that she and her husband stored items they owned in the closed-in patio addition attached to the front of the trailer. One of those items, according to Wanda, was a go-cart. When defendant arrived at the scene that morning in his truck, according to Wanda, she saw her go-cart in the back of defendant's truck. After defendant was questioned by Deputy Davison, defendant took Jimmy to nearby houses where some of Jimmy's stolen property was

5

located. Jimmy did not know the residents of these houses. One of those residents was Derick Koobs, who lived on Rosewood Street. According to Koobs, he had loaned defendant $60.00 and asked defendant to pay him back with a "tool or something." About two weeks before defendant's arrest, Koobs found a commercial cutting torch and acetylene bottles on his porch, which were later identified as belonging to Jimmy. According to Koobs, he did not own this property and did not know how it got on his porch.

Jimmy testified that he was allowed to speak to defendant after he had been placed in the patrol unit. According to Jimmy, defendant told him "he was going to help me get my stuff back, to please don't press no charges on him, that he was sorry for what had happened."

Finally, some of Jimmy's possessions were found under defendant's mother's carport. According to Jimmy, he had stored tools and equipment in his shop, such as welding machines, air conditioning equipment, an engine-hoist remover, transmission equipment, and Snap-on toolboxes with tools to operate his automobile repair business. Jimmy testified that on the day of defendant's arrest, he saw his hot-water heater in defendant's mother's driveway. Further, when Jimmy walked onto defendant's mother's property, he saw that the carport was "overwhelmed with stuff in it. It had my oil pans from my race cars. It had the cables to my old welding machines where they were cut and stripped. You could look at all the stuff that I had in my places was cut up to pieces of scrap to be hauled off." Jimmy added: "My [motorcycle] engine was sitting off to the side. All kinds of things that were there at my house were sitting there in the carport, but it was all destroyed."

Herein, the jury was informed of the method of identification to which it could attach the weight it deemed appropriate. Since defendant's counsel urged the defense of misidentification to the jury, the question of reliability was presented to the jury for consideration. **Cockerham**, 231 So.3d at 705. Based on the testimonial and physical evidence, the jury found defendant guilty, which was a direct refutation of defendant's theory of innocence. Moreover, the jury could have rationally concluded, based on all of the circumstantial evidence, that defendant either personally entered Jimmy's house

6

and shop and took his belongings or he aided and abetted a group of people who, over time, periodically went inside Jimmy's house and shop and took Jimmy's belongings. See **State v. Blanks**, 07-1292 (La.App. 1 Cir. 2/8/08), 2008 WL 427283, *4-5 (unpublished), writ denied, 08-0703 (La. 10/10/08), 993 So.2d 1282. Even a person who serves as a lookout is a principal to a burglary. **State v. Stock**, 16-552 (La.App. 5 Cir. 2/22/17), 212 So.3d 1268, 1274-77; **State v. Mack**, 30,832 (La.App. 2 Cir. 6/24/98), 715 So.2d 126, 129.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. **State v. Gilley**, 19-1543 (La.App. 1 Cir. 7/17/20), 308 So.3d 1194, 1200, writ denied, 20-01067 (La. 12/22/20), 307 So.3d 1026. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. **State v. Mitchell**, 99-3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. **State v. Nixon**, 17-1582 (La.App. 1 Cir. 4/13/18), 250 So.3d 273, 291, writ denied, 18-0770 (La. 11/14/18), 256 So.3d 290. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. **State v. Higgins**, 03-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).

When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **State v. Moten**, 510 So.2d 55, 61 (La.App. 1 Cir.), writ denied, 514 So.2d 126 (La. 1987). In finding defendant guilty, the jury clearly rejected the defense's theory of misidentification. See **Moten**, 510 So.2d at 61. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict based on an exculpatory hypothesis of innocence

presented to, and rationally rejected by, the jury. **State v. Eby**, 17-1456 (La.App. 1 Cir. 4/6/16), 248 So.3d 420, 426-27, writ denied, 18-0762 (La. 2/11/19), 263 So.3d 1153.

After a thorough review of the record, we find the evidence negates any reasonable probability of misidentification and supports the jury's guilty verdicts. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant was guilty of two counts of simple burglary. See **State v. Calloway**, 07-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, defendant argues the trial court erred in denying a challenge for cause of juror Shannon Hand.

Herein, defendant had already exhausted his six peremptory challenges before challenging Hand for cause. Additionally, the record reflects that there was no objection to the trial court's rulings denying the challenge for cause as to Hand. A defendant may not assign as error on appeal a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. LSA-C.Cr.P. art. 800A; **State v. Mills**, 13-0573 (La.App. 1 Cir. 8/27/14), 153 So.3d 481, 486, writ denied, 14-2027 (La. 5/22/15), 170 So.3d 982, and writ denied, 14-2269 (La. 9/18/15), 178 So.3d 139. Accordingly, we will not consider defendant's arguments regarding Hand.[2]  This assignment of error is without merit.

---

[2] Moreover, we note that it appears the trial court offered defendant the opportunity to undo one of his previous peremptory challenges to use on Hand, but defendant declined. Following is that relevant discussion after the voir dire questioning:

> THE COURT: I'm not going to grant that one. I think it was sufficiently in the past where [Hand's] gotten over it. You can use a perempt on her, if you want.
>
> MR. HARVEY [defense counsel]: I don't have any to use on -- left to use on her.
>
> THE COURT: Well, do you want to -- based on that, do you want to change any of them?
>
> MR. HARVEY: No.

8

**CONCLUSION**

Considering the foregoing, we affirm defendant's convictions and sentences.

**CONVICTIONS AND SENTENCES AFFIRMED.**