NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-172 c/w 20-173

STATE OF LOUISIANA

VERSUS

AKEELEY KESHAWN BLADE

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 330,422
HONORABLE LOWELL C. HAZEL, DISTRICT JUDGE

**********

D. KENT SAVOIE
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED.

**J. Phillip Terrell, Jr.**
**District Attorney**
**Ninth Judicial District Court**
**P. O. Box 7358**
**Alexandria, La. 71306-7358**
**(318) 473-6650**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **State of Louisiana**

**Catherine L. Davidson**
**Assistant District Attorney**
**P. O. Box 7358**
**Alexandria, La. 71306-7358**
**(318) 473-6650**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **State of Louisiana**

**Michael A. Brewer**
**Law Office of Michael A. Brewer**
**2030 Jackson Street**
**Alexandria, La. 71301**
**(318) 443-4006**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Akeeley Keshawn Blade, Jr.**

**SAVOIE, Judge.**

Defendant appeals his convictions of first degree murder, criminal conspiracy to commit second degree robbery, and second degree robbery, as well as the sentences imposed with respect to his convictions. For the following reasons, we vacate Defendant's conviction for first degree murder and remand the matter for trial. Otherwise, we affirm Defendant's convictions and sentences for conspiracy to commit second degree robbery and second degree robbery.

## PROCEDURAL AND FACTUAL BACKGROUND

On August 25, 2016, Defendant, Akeeley Keshawn Blade, Jr., was charged by indictment with first degree murder, a violation of La.R.S. 14:30, and conspiracy to commit second degree robbery, a violation of La.R.S. 14:26 and La.R.S. 14:64.4. The victim of the offenses was Michael Butler, a man that Defendant and other co-conspirators encountered at Motel 6 in Alexandria, Louisiana.

On March 16, 2017, Defendant entered a plea of guilty to an amended charge of manslaughter, a violation of La.R.S. 14:31, and conspiracy to commit second degree robbery. Defendant withdrew that plea on May 8, 2017.

On May 9, 2017, Defendant was charged by bill of information in a separate trial court docket number with second degree robbery, a violation of La.R.S. 14:64.4. The two trial court docket numbers were subsequently consolidated.

A jury trial commenced on December 5, 2017, and Defendant was found guilty as charged in both matters on December 7, 2017.

On August 26, 2019, Defendant was sentenced to life imprisonment at hard labor without benefit of probation or suspension of sentence for first degree murder, fifteen years at hard labor for conspiracy to commit second degree

robbery, and thirty years at hard labor for second degree robbery. All sentences were ordered to be served concurrently.

Defendant subsequently filed a Motion for Reconsideration of Sentence, which was denied on September 16, 2019. A "Notice of Appeal" was filed on September 23, 2019, and was subsequently granted. On appeal, Defendant asserts the following assignments of error:

1.

The conviction of Akeeley K. Blade was obtained in violation of his constitutionally guaranteed rights under the Sixth and Fourteenth Amendments to the United States Constitution.

2.

The jury erred in convicting Akeeley K. Blade of the offense of First Degree Murder as there was insufficient evidence presented to support the conviction.

3.

The trial court and jury erred in convicting Akeeley Blade of the offense of First Degree Murder in that, at the commencement of the trial, he was charged, by amendment, with the offense of Manslaughter.

4.

The jury erred in convicting Akeeley Blade of Criminal Conspiracy to Commit Second Degree Robbery as there was insufficient evidence presented to support the conviction.

5.

The jury erred in convicting Akeeley Blade of the offence of Second Degree Robbery as there insufficient evidence presented to support the conviction.

6.

The jury erred in convicting Akeeley Blade of the offenses of First Degree Murder, Criminal Conspiracy to Commit Second Degree Robbery and Second Degree Robbery in that the evidence provided at trial supports only convictions for lesser included offenses.

7.

The trial court erred in declining to allow trial counsel to introduce evidence that the sentence received by a cooperating co-defendant was improper under Louisiana Law.

8.

The trial court erred in imposing an unconstitutionally excessive sentence of the offense of Second Degree Robbery.

9.

The trial court erred in imposing an unconstitutionally excessive sentence for the offense of Conspiracy to Commit Second Degree Robbery.

10.

The jury erred in its convictions of Akeeley Blade in that a juror engaged in misconduct during jury selection by failing to disclose information regarding his prior working relationship with the grandmother of Mr. Blade as well as his daughter's relationship with Mr. Blade's sister.

## ANALYSIS

### ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there is an error patent, which is addressed below in connection with Defendant's Assignment of Error No. 1.

### ASSIGNMENT OF ERROR NO. 3:

We first address Defendant's third assignment of error wherein Defendant contends that the trial court and jury erred in convicting him of first degree murder

3

when, at the commencement of the trial, he was charged by amendment with manslaughter.

On March 16, 2017, Defendant withdrew his former plea of not guilty. The "Plea of Guilty and Waiver of Rights" form reflects Defendant pled guilty to an amended charge of one count of manslaughter, as well as one count of conspiracy to commit second degree robbery. In exchange for the plea, Defendant was to be sentenced to forty years at hard labor for manslaughter and twenty years at hard labor for conspiracy to commit second degree robbery. The sentences were to be served concurrently. The State also agreed to "DISMISS DA file 116-3672 DISMISS 331546." This form was signed by Defendant, defense counsel, and the judge.

On May 8, 2017, defense counsel moved to withdraw Defendant's plea, and the motion was granted. At trial, the indictment charging Defendant with first degree murder was read to the jury after the members of the jury were sworn, and Defendant was subsequently found guilty of that offense.

In Defendant's "Motion for New Trial #2," he argued he could not be convicted of first degree murder after that charge had been amended to the offense of manslaughter. Thus, the verdict of first degree murder was contrary to the law and evidence, and the ends of justice would be served by the granting of a new trial. A hearing on the motion was held on March 20, 2019. At that hearing, defense counsel acknowledged that he was aware that Defendant was proceeding to trial on the original charge of first degree murder and did not object to the reading of the indictment. He argued the State's failure to reamend the indictment to reflect a charge of first degree murder was error patent and could be raised at any time.

The State asserted that Defendant's arguments lacked merit as there was no objection made or surprise in this case. The State further argued that any error was harmless due to lack of surprise. The State relied on *State v. Cox*, 474 So.2d 523 (La.App. 3 Cir. 1985), *writ granted in part on other grounds*, 481 So.2d 1328 (La.1986), to support its conclusion.

In *Cox,* the defendant was originally indicted for second degree murder, and then to a lesser charge of manslaughter in accordance with a plea bargain. The defendant later withdrew her guilty plea, and the State failed to re-amend the indictment to second degree murder. On appeal, the defendant argued she was tried under an invalid indictment. This court addressed the issue:

> The State's failure to re-amend the indictment is an error patent and, as such, may be asserted at any time. *State v. Buttner*, 411 So.2d 35 (La.1982). However, errors patent are not necessarily reversible errors. It is the potential impact of the error on the fairness of the proceedings which determines whether a reversal is required. *State v. Minix*, 438 So.2d 1261 (La.App. 3 Cir.1983); *State v. White*, 404 So.2d 1202 (La.1981).

> The technical sufficiency of an indictment may not be raised after conviction where the accused has been fairly informed of the charge against him and has not been prejudiced by surprise or lack of notice and will not be truly subject to any jeopardy of further prosecution. *State v. James*, 305 So.2d 514 (La.1974); *State v. Robicheaux*, 412 So.2d 1313 (La.1982). In the present case, the reduction of the original charge to manslaughter was premised on a plea bargain arrangement. There is no claim that defendant and her attorney were not fully aware that when defendant chose to withdraw her guilty plea, the prosecution's offer to reduce the charge was likewise withdrawn. The indictment for second degree murder and defendant's plea were read in open court. No objection was made on defendant's behalf at that time. No surprise or lack of notice was shown or even claimed.

> Furthermore, any error in failing to re-amend the indictment to charge defendant with second degree murder was clearly harmless error. The State had amended the indictment to charge defendant with manslaughter. Since defendant was convicted of manslaughter, the fact that the indictment was never formally re-amended resulted in no harm to defendant.

*Id.* at 526-27.

In response, defense counsel argued that *Cox* was distinguishable. He further reiterated that he knew Defendant was proceeding to trial for first degree murder.

The trial court denied the motion on June 7, 2019, finding *Cox* was applicable to the case and stating:

> [T]he technical sufficiency of an indictment may not be raised after conviction where the accused *has been fairly informed* of the charge against him and *has not been prejudiced by surprise or lack of notice* and will not be truly subject to any jeopardy of further prosecution. Defendant was not—and could not—have been surprised by the State proceeding with first-degree murder when he withdrew his manslaughter plea, thus terminating his agreement with the State.

On appeal, Defendant asserts that manslaughter was the only offense upon which the State could have proceeded at trial because the State failed to return the matter to the grand jury to obtain an indictment for first degree murder after previously amending the charge to manslaughter. Defendant also contends this is not an evidentiary issue that requires a contemporaneous objection.

Defendant argues that *Cox* is distinguishable because the defendant therein was convicted of manslaughter, which was the amended charge, and therefore suffered no prejudice. However, Defendant herein was convicted of the original charge of first degree murder, rather than the reduced charge, and accordingly, suffered extreme prejudice.

In response, the State argues that *Cox* is directly on point and applicable to the instant case. The State further submits that Defendant knew he was going to trial for first degree murder, and thus, he was not prejudiced by the error patent.

6

We find that *Cox* is arguably distinguishable from the instant matter because the defendant therein was found guilty of the amended charge, whereas Defendant herein was not. However, the issue presented herein can be resolved by comparing the matter to other cases in which defendants' pleas were vacated.

In *State v. Boudreaux*, 402 So.2d 629 (La.1981), the defendant was charged with armed robbery but eventually pled guilty to simple robbery. However, his guilty plea was subsequently set aside because he was not advised of his confrontation rights, and the defendant was later rearraigned on the crime of armed robbery. Defendant thereafter argued that re-arraignment on the charge of armed robbery impermissibly constituted double jeopardy. The supreme court addressed whether a plea to a lesser offense was an acquittal on the greater offense such that subsequent re-prosecution on the greater offense was barred, stating:

> **After the plea was vacated the situation reverted to the pre-plea stage**. Here we have a situation where there has been a major change other than just an appeal by his own hand, defendant has upset his bargain and now pleaded not guilty to both charges. There is no appearance of retaliation when a defendant is placed in the same position as he was before he accepted the plea bargain.

*Id.* at 633 (emphasis added).

In *State v. Roberts*, 01-3030 (La.App. 1 Cir. 6/21/02), 822 So.2d 156, *writ denied*, 02-2054 (La. 3/14/03), 839 So.2d 31, the defendant entered a plea of guilty to aggravated criminal damage to property, a violation of La.R.S. 14:55 and was subsequently sentenced to serve seven years at hard labor. Defense counsel then moved to withdraw defendant's guilty plea, noting defendant's reservation of his right to do so if he were sentenced to more than probation. The trial court denied the motion. The first circuit addressed the issue, stating:

> At the original sentencing, the trial court sentenced the defendant to seven years at hard labor. This was a sentence "more

7

stern than probation" and triggered the defendant's "right to withdraw the plea".

The agreement pursuant to which the defendant changed his plea to guilty is analogous to a civil contract with a conditional obligation subject to a resolutory condition. La. C.C. arts. 1767 and 1770; S. Litvinoff, *The Law of Obligations, 5 La. Civ. Law Treatise* § 5.7, pp. 80-83 (2001). The resolutory condition is a sentence that is "more stern than probation". When that occurred, the defendant became vested with the "right to withdraw the plea", and he elected to exercise that right. Cf. La. C.C. art.2013. The trial court committed error by refusing to allow him to do so. Under the particular facts and circumstances of this case, the defendant's guilty plea was not free and voluntary, and, thus, was void.

Pursuant to civil contract law, the fulfillment of a resolutory condition is retroactive to the inception of the obligation. La. C.C. art. 1775. Cf. La. C.C. art.2018. The remedy is to return the parties to their original positions. S. Litvinoff, *The Law of Obligations, 5 La. Civ. Law Treatise* § 5.12, pp. 89-92 (2001). Accordingly, the defendant's guilty plea and sentence are vacated and **his plea of not guilty to the La. R.S. 14:55 charge is reinstated.**

*Id.* at 160-61 (emphasis added).

In *State v. Cloud*, 06-877, p. 12 (La.App. 3 Cir. 12/13/06), 946 So.2d 265, 273, *writ denied*, 07-86 (La. 9/21/07), 964 So.2d 331 (emphasis added), this court quoted *Boudreaux*, 402 So.2d 629, and stated: "[A]fter the Defendant's guilty plea was vacated in this matter, the case reverted to it[s] pre-plea stage, **resurrecting the original charges**."

In *State v. Frazier*, 618 So.2d 1217, 1219 (La.App. 5 Cir. 1993), the plea was "set aside and the parties placed in their original positions" because the defendant could not be afforded the bargained-for appellate review.

Therefore, based upon the cases discussed herein, we conclude that once Defendant withdrew his guilty plea to manslaughter, the case reverted back to the original charge of first degree murder. There is no claim that Defendant was not fully aware that when he withdrew his plea to manslaughter the State's offer to

reduce the charge would not likewise be withdrawn. Moreover, Defendant did not object to the reading of the indictment for first degree murder and knew that he was proceeding to trial on that charge. For these reasons, Defendant's third assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 1:

In his first assignment of error, Defendant contends his conviction for first degree murder was obtained in violation of his constitutionally guaranteed rights under the Sixth and Fourteenth amendments to the United States Constitution.

The verdict as to the first degree murder charge was eleven to one. Defendant asserts the ruling in *Ramos v. Louisiana*, 590 U.S. ___, 140 S.Ct. 1390 (2020), applies to his case, and therefore, his conviction for first degree murder should be reversed and a new trial ordered.

In *Ramos*, the Supreme Court found non-unanimous jury verdicts unconstitutional. Therefore, we find that Defendant's conviction for first degree murder must be vacated and the case remanded to the district court for a new trial. In light of this conclusion, we pretermit consideration Defendant's second assignment of error as it is moot.

## ASSIGNMENTS OF ERROR NO. 4 & 5:

In these two assignments of error, Defendant argues that there is insufficient evidence to support his convictions of criminal conspiracy to commit second degree robbery and second degree robbery. Specifically, Defendant asserts that, because there was no evidence establishing an intent to cause serious bodily harm and no evidence establishing a plan to cause serious bodily harm, his convictions are not supported by the record.

"In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) . . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La. 1984). Where a conviction is based on circumstantial evidence, as is the case here, the evidence "must exclude every reasonable hypothesis of innocence." La.R.S. 15:438.

In addition, the *Jackson* standard of review does not allow a jury to speculate on the probabilities of guilt where rational jurors would necessarily entertain a reasonable doubt. *State v. Mussall*, 523 So.2d 1305, 1311 (La. 1988) (citing 2 C. *Wright, Federal Practice & Procedure, Criminal 2d*, § 467). The requirement that jurors reasonably reject the hypothesis of innocence advanced by the defendant in a case of circumstantial evidence presupposes that a rational rejection of that hypothesis is based on the evidence presented, not mere speculation. *See State v. Schwander*, 345 So.2d 1173, 1175 (La. 1977). Nonetheless, the *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.' " *Coleman v. Johnson*, 566 U.S. 650, 655, 132 S.Ct. 2060, 2064, 182 L.Ed.2d 978 (2012).

Review under the *Jackson* due process standard encompasses all of the evidence, inadmissible as well as admissible, introduced at trial. *See State v. Hearold*, 603 So.2d 731, 734 (La. 1992) ("[W]hen the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial.") (citing *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed. 2d 265 (1988)).

*State v. Mayeux*, 19-369, pp. 2-3 (La. 1/29/20), ___ So.3d ___, *vacated on other grounds*, ___ U.S. ___, ___ S.Ct. ___ (2020) (alterations in original).

Louisiana Revised Statutes 14:26 defines a "criminal conspiracy" as:

the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

Thus, as recognized in *State v. Henry*, 12-545, pp. 20-21 (La.App. 5 Cir. 5/30/13), 119 So.3d 713, 724, *writ denied*, 13-1334 (La. 1/10/14), 130 So.3d 317,

> the elements of the crime of conspiracy are: (1) an agreement or combination of two or more persons for the specific purpose of committing a crime, plus (2) an act done in furtherance of the object of the agreement or combination. *State v. Tatum*, 09-1004 (La.App. 5 Cir. 5/25/10); 40 So.3d 1082, 1089.
>
> The first element of conspiracy requires specific intent, which is defined as the "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." *State v. Zeno*, 99-69 (La.App. 5 Cir. 8/31/99); 742 So.2d 699, 704, *writ denied*, 00-105 (La. 6/30/00); 765 So.2d 1065 (citing La. R.S. 14:10(1)). The determination of specific criminal intent is a question of fact and may be inferred from circumstances and actions of the defendant. *Id.* (citation omitted). Proof of a conspiracy may be made by direct or circumstantial evidence. *Id.*, 99–69 at 7; 742 So.2d at 705 (citation omitted).

"Criminal intent to commit a specific offense must exist in at least two minds." *State v. Lowery*, 609 So.2d 1125, 1130 (La.App. 2 Cir. 1992), *writs denied*, 617 So.2d 905 (La.1993).

Therefore, at issue with respect to Defendant's conviction for conspiracy to commit second degree robbery is whether or not the agreement between the participants was to commit the offense of second degree robbery. Defendant asserts that the testimony at trial, if believed by the jury, proved only that there was an agreement to commit robbery. He argues that none of the co-defendants testified as to a plan to cause serious bodily harm and the evidence presented otherwise did not suggest such a plan.

In *State v. Perry*, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, *writ denied*, 09-1955 (La. 6/25/10), 38 So.3d 352, this court affirmed the defendant's conviction for conspiracy to commit armed robbery. This court noted:

11

First, the Defendant argues that "there was never any fixed terms as to what they were going to do at Sonic and how" and argues that the meeting near Sonic Drive–In was not an "act in furtherance." Second, the Defendant asserts that he and the co-conspirator "never discussed robbing the Sonic Drive–In at gunpoint." Finally, he asserts the co-conspirator testified that they "never agreed to rob anything and that they merely discussed if it was feasible."

The Defendant's conspiracy charge stemmed from the comments he made to Officer Vickers. In particular, the Defendant told Officer Vickers that he and his cousin were waiting across the street to see what time Sonic Drive–In closed. He also told Officer Vickers that they were watching Sonic Drive–In because they planned to rob it the next night but some other men beat them to it. Officer Vickers's testimony was corroborated by the testimony of the co-conspirator.

The co-conspirator testified that he and the Defendant had previously discussed robbing Sonic Drive–In before the night of the robbery, and stated that they probably discussed it that night but did not plan to do it then. The co-conspirator also testified that he used to work at Sonic Drive–In and that the robbery was his idea. Because the co-conspirator was once employed at Sonic Drive–In, he also knew what time it closed and when the managers would be leaving with the night deposit. Thus, the first element of conspiracy is satisfied.

*Id.* at 347-48.

Defendant herein argues there was no agreement or plan covering all aspects of the conspiracy. However, multiple witnesses testified about a plan to rob the victim, Mr. Butler. Brooke Daniels, who was sixteen at the time of the offense, and eighteen at the time of trial, had previously pled guilty to conspiracy to commit second degree robbery in connection with the August 10, 2016 incident at issue, and sentenced to serve ten years. As part of her plea deal, she agreed to testify at Defendant's trial.

Ms. Daniels testified that on August 10, 2016, she and Defendant, along with Camryn Lasyone, Olivia Meche, and Kyeyair Lampkin were hanging out at motel room at a Motel 6. They left around 11:00 to get alcohol and subsequently returned to the room. She indicated that she saw Mr. Butler talking with Ms.

12

Meche, who was fifteen years old at the time. According to Ms. Daniels, Ms. Meche asked Mr. Butler for $100, and Mr. Butler then asked Ms. Meche for sexual favors in exchange for the money. Ms. Daniels further indicated that Mr. Butler's request made both Defendant and Mr. Lasyone mad.

Ms. Daniels stated that Defendant, Mr. Lasyone, and Brandon Swift subsequently discussed robbing Mr. Butler. She further stated that both Defendant and Mr. Lasyone took part in planning the robbery and they were equally involved in every step. The plan initially included having Ms. Meche knock on Mr. Butler's room door. Ms. Meche refused, but Ms. Daniels agreed to do so. Ms. Daniels testified that Defendant and Lasyone told her what to say, including a code word.

According to Ms. Daniels, the group then went to Mr. Butler's room, where Ms. Daniels knocked on his door and asked "for a Jo."[1] After Ms. Daniels asked "for a Jo," Mr. Butler told her to come in. Ms. Daniels then backed up and said "okay for them to go into [Mr. Butler's] room." Defendant and Mr. Lasyone then went into the room, and Ms. Daniels ran. She testified that she saw Mr. Butler's neck turn but did not see him being struck by anyone. Ms. Daniels then ran to Ms. Meche, and the two went to Mr. Lasyone's truck. Defendant, Mr. Lasyone, and Mr. Swift eventually got into the truck, and they went to Ms. Daniels's house. According to Ms. Daniels, Defendant was mad because he did not get any money, and Mr. Lasyone stated, "he wanted to be first the next time," which she explained meant to hit someone.

Ms. Meche, who was seventeen years old at the time of trial, also testified. She indicated that on August 10, 2016, she, along with Defendant, Ms. Daniels, Mr. Lasyone, and Mr. Lampkin, as well as Travis Weston, Corey Ellison, Brandon

_____

[1]There was no explanation of what the term "Jo" meant.

Swift, Gage Dauzat, and Corey Rosenthal were present in two motel rooms at Motel 6. She testified that, at one point, she and Ms. Meche were outside talking to Mr. Butler, and Defendant and Mr. Lasyone "got a little jealous. . . . I don't know why they got mad at [Mr. Butler] but when we went in the room . . . one of them told me to go ask him if he had some money[.]" Ms. Meche further stated, "So I went and asked him if he had any money, and he told me he didn't. So I went back and I told them that they didn't have any money so -- and then after that they thought that he was lying so they planned to rob him." She explained that "they" referred to Defendant and Mr. Lasyone.

According to Ms. Meche, Defendant and Mr. Lasyone wanted her to knock on Mr. Butler's door to trick him into opening it, but she refused, and further tried to talk them out of robbing Mr. Butler. She further explained that Ms. Daniels later knocked on Mr. Butler's door, and the two then ran to the truck. Shortly thereafter, Defendant, Mr. Lasyone, and Mr. Swift also ran to truck. Per Ms. Meche, Mr. Lasyone bragged about how hard he had hit Mr. Butler, and Defendant cussed and screamed because they did not get the money.

Mr. Lasyone also testified at trial. He had previously pled guilty to manslaughter in connection with the August 10, 2016 incident and received a twenty-five year sentence, ten of which were suspended, with three years of supervised probation upon his release from incarceration. According to Mr. Lasyone, he, along with Defendant, Mr. Weston, and Ms. Daniels were in the room when the robbery was being planned. He indicated that it was Defendant who initially came up with the plan to rob Mr. Butler, and any witnesses who suggested he had helped in the planning were lying. He was questioned at trial as follows:

Q.     . . . Who, who said let's rob the man?

A. Akeeley.

Q. Okay. And did Akeeley say why he wanted to rob the man?

A. I was the one that said wait, there was money involved, sir.

Q. And you mentioned about money?

A. Yes, sir.

. . . .

Q. Okay and I mentioned why did Akeeley want to rob the man?

A. Because I, I said that there was money involved.

Q. Okay. Did Akeeley say anything at that point?

A. No, sir.

Then, according to Mr. Lasyone, after Ms. Daniels knocked on Mr. Butler's door and signaled to the others as previously instructed, Defendant, Mr. Weston, and Mr. Lasyone entered Mr. Butler's room in that order. Mr. Lasyone testified that Defendant punched Mr. Butler when he tried to close the door and continued to punch Mr. Butler until he passed out. He explained that Mr. Butler fell to the ground after approximately the fourth punch, Defendant continued to strike Mr. Butler even after he fell to the ground, and after Mr. Butler fell, Mr. Weston hit Mr. Butler with a gun. Mr. Lasyone stated that "they" then dug through Mr. Butler's pockets and Defendant removed Mr. Butler's wallet from his pocket. Then he left the room, followed by Mr. Weston, and then Defendant. Mr. Lasyone, Defendant, Ms. Daniels, Ms. Meche, and Mr. Swift got into Mr. Lasyone's truck and left. However, Mr. Weston stayed at the Motel 6.

According to Mr. Lasyone, once in the truck, Defendant dug through Mr. Butler's wallet; however, it did not contain any money, so he subsequently threw

15

the wallet out of the window. Mr. Lasyone further testified that he had lied to the others in the truck about him hitting Mr. Butler.

Mr. Lasyone also testified that while he had not planned on beating Mr. Butler, beating him had been discussed prior to the group entering Mr. Butler's motel room. When asked what he thought was going to happen in the room, Mr. Lasyone testified that he did not think "we" would beat Mr. Butler until he was unconscious; however, he later stated he did not mean to say "we," but rather meant only to say Defendant and Mr. Weston.

Mr. Lampkin also testified at trial. He agreed that he had told police in connection with a statement given on August 11, 2016, that Defendant had planned the robbery. He further testified as follows about his statement:

> A. Okay. So Akeeley told you that they had planned it out to where him and Travis [Weston] had Brooke [Daniels] knock on the door?
>
> Q. Okay, now what was your response?
>
> A. Yes, sir.
>
> Q. Okay. Does that say Akeeley told you that he planned it out or does it say they planned it out?
>
> A. That's what I, I never said that like -- I wasn't physically saying that he planned it by himself.
>
> Q. Okay But I'm just looking at what the statement -- the question says and what your answer says. They had planned it out.
>
> A. Yes, sir.

The testimony of Ms. Daniels, Ms. Meche, Mr. Lasyone, and Mr. Lampkin clearly identifies Defendant as having taken part in planning the robbery. While Mr. Lasyone testified that, prior to entering Mr. Butler's room, he did not think Mr. Butler would be beaten until unconscious, we note that specific intent may be

16

inferred from the circumstances and actions of Defendant and his co-conspirators in planning to attack Mr. Butler and conclude that the evidence is sufficient to support Defendant's conviction for conspiracy to commit second degree robbery.

In addition, recordings of phone calls Defendant made from jail to his mother and grandmother were accepted into evidence at trial. Defendant called his mother, Jessica Mitchell, on August 12, 2016, at 11:56 a.m. During the call, Defendant informed his mother that he did not kill anyone. His mother asked what happened, and Defendant stated, "we tried to rob him, and all I did was hit him. I hit him like five times . . . and then we got money and we ran out." Defendant said that they had agreed to rob the man because the man was flashing money. Defendant further explained that he hit the man with his fists, he was not the only one who hit him, no gun was involved, and he saw the man get up to run after them. Defendant also told his mother that he was on weed and a "xan bar" at the time of the incident.

Defendant called his mother again from jail on August 15, 2016, at 2:30 p.m. During that call, he denied killing the man, but then admitted that he took part in the events that resulted in a death.

Defendant also called his grandmother, Irene Roy, from jail on August 12, 2016, at 11:45 a.m. During that call, Defendant told his grandmother that he had robbed the man and beaten him with his fists, but that someone else must have killed the man. Defendant explained that when he left the room, the man was getting up to chase them, and another man was walking toward the room as Defendant left.

Defendant called his grandmother again from jail on August 13, 2016, at 2:13 p.m. He informed her that the other two people who were with him also hit

17

the man, and then, as the man was getting up to chase them, all three of them ran out. Defendant said that he did not think the man would die, and it was the last thing on his mind. Defendant explained that they had chosen man because he was flashing money when they were talking to him. Defendant also told his grandmother that he was high at the time on marijuana and Xanax.

Defendant made another call to his grandmother from jail on August 14, 2016, at 2:28 p.m. During that call, Defendant stated that Mr. Weston was being held for murder, and "they" found the gun Weston had. He also said that Mr. Weston hit the man with the gun.

With respect to Defendant's second degree robbery conviction, Louisiana Revised Statutes 14:64.4 defines second degree robbery:

> A. (1) Second degree robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another when the offender intentionally inflicts serious bodily injury.

> (2) For purposes of this Section, "serious bodily injury" means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.

Therefore, to convict Defendant of second degree robbery, it was necessary for the State to prove: 1) the taking of; 2) anything of value; 3) belonging to another from the person of another or that is in the immediate control of another; 4) when the offender intentionally inflicts serious bodily injury. La.R.S. 14:64.4. On appeal, Defendant argues the State failed to prove beyond a reasonable doubt that he possessed the requisite intent to cause serious bodily injury.

> [Louisiana Revised Statutes] 14:64.4 requires proof of specific intent. *See State v. Fuller*, 414 So.2d 306, 309-310 (La.1982) (holding the requirement in La. R.S. 14:34.1 that the serious bodily injury be

18

intentionally inflicted indicated the legislature intended that second degree battery be a crime requiring specific criminal intent).

Specific criminal intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. *State v. Buchanon*, 95-0625, p. 4 (La.App. 1 Cir. 5/10/96), 673 So.2d 663, 665, *writ denied*, 96-1411 (La. 12/6/96), 684 So.2d 923.

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24. However, the defendant's mere presence at the scene is not enough to "concern" an individual in the crime. A principal may be connected only to those crimes for which he has the requisite mental state. *State v. Hampton*, 98-0331, p. 13 (La. 4/23/99), 750 So.2d 867, 880, *cert. denied*, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999).

*State v. Allen*, 05-1622, p. 5 (La.App. 1 Cir. 3/29/06), 934 So.2d 146, 152-53.

In *Allen*, the defendant argued there was insufficient evidence to support his conviction of second degree robbery because there was no testimony that he beat the victim. The first circuit addressed the sufficiency of the evidence as follows:

The trial court provided a detailed analysis of the proof offered by the State against the defendant and why that proof was sufficient to prove the charge. In regard to the proof of the intent element, the court noted:

The State must further prove that the offender intentionally inflicted serious bodily injury. On this issue the evidence proves that Mr. Allen did not strike Mr. Cheramie, nor did he kick Mr. Cheramie. The issue then becomes whether or not Mr. Allen acted as a principal to the crime of second degree robbery.

. . . .

19

Therefore, Mr. Allen can be a principal to the crime of second degree robbery even if he did not physically strike the victim or kick the victim if the State proves beyond a reasonable doubt that he was concerned in the commission of the crime.

In proof of this element of the crime, the State offered the testimony of Todd Cheramie. Todd Cheramie testified that the defendant dragged him by his feet from the motor vehicle and the defendant held the victim's feet as he completed dragging him out of the vehicle at a position approximately two feet from the motor vehicle and began to remove the shoe or shoes of Mr. Cheramie apparently in some effort to locate some item of property upon Mr. Cheramie. And then began to touch the body of Mr. Cheramie and removed from Mr. Cheramie's pocket or pockets the dollar bill, approximately fifty cents in change, pack of cigarettes, wallet, driver's license and marijuana all at the same time that Earl Curole, Jr. and Troy Loupe were standing on either side of Todd Cheramie kicking him and striking him. Clearly this evidence proves beyond a reasonable doubt that the defendant, Michael Allen, was concerned in the commission of the crime of second degree robbery, or stated in another way set forth in the case law, that he participated in the commission of the crime of second degree robbery. He was accomplishing the taking of anything of value from the person of the victim while two codefendants were attempting to inflict bodily injury to Mr. Cheramie by striking him and kicking him.

Therefore, there is proof beyond a reasonable doubt that the defendant had the intent to inflict serious bodily injury upon Mr. Cheramie.

. . . The facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence were sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant had the specific intent to inflict serious bodily injury on the victim during the offense. The defendant was not merely present at the scene. He knowingly participated in the execution of the offense against the victim and played an integral part in the completion of the offense. The defendant drove the vehicle while the victim was beaten by Curole and Loupe. Furthermore, the defendant dragged the victim out of the vehicle, demanded the victim's property, and forcefully removed the property from the victim while the defendant's accomplices viciously beat the victim to prevent his resistance.

*Id.* at 153-54.

20

In *State v. Dickerson*, 16-1336, p. 7 (La.App. 1 Cir. 4/12/17), 218 So.3d 633, 639-40, *writ denied*, 17-1147 (La. 8/31/18), 251 So.3d 1062, the first circuit discussed intent to inflict serious bodily injury regarding a conviction for second degree battery, stating:

> [W]hether the defendant's first punch, which caused the defendant [sic] to buckle and fall into Dan, or whether the defendant's subsequent punches caused the severe damage to David's eye, a rational juror could have reasonably concluded the defendant had the specific intent to inflict serious bodily injury on David. See **State v. Hager**, 2013–546 (La. App. 5th Cir. 12/27/13), 131 So.3d 1090, 1093; **State v. Landry**, 2003–1671 (La. App. 4th Cir. 3/31/04), 871 So.2d 1235, 1239; **State v Johnson**, 602 So.2d 310, 312 (La. App. 1st Cir. 1992). Dan's testimony about how the defendant continued to beat a man who was already down was particularly relevant regarding intent.

While discussing the excessive nature of the defendant's sentence for aggravated burglary in *State v. Sharpley*, 42,309, p. 8 (La.App. 2 Cir. 6/20/07), 960 So.2d 1230, 1235, the second circuit stated: "Defendant's conduct in the course of this crime—breaking the elderly victim's facial bones and leaving her in critical condition—is indicative of his intention to inflict serious bodily injury . . . . This is conduct more akin to second-degree robbery[.]"

In *State v. Jackson*, 02-1250 (La.App. 3 Cir. 2/5/03), 838 So.2d 841, *writ denied*, 03-832 (La. 10/17/03), 855 So.2d 759, this court concluded that evidence that the defendant struck the victim in the face without warning three times when the victim was bending down to pick up a bag was sufficient to support a finding that the defendant had the requisite specific intent to inflict serious bodily injury.

Defendant herein argues that none of the co-defendants intended to cause serious bodily harm to Mr. Butler. Rather, they planned to get Mr. Butler to open the door and for the others to rush into the hotel room. Defendant suggests that there was no testimony that any of the parties, during the planning phase, intended

21

death or great bodily harm to result. Defendant further argues that, according to the evidence, Mr. Lasyone struck Mr. Butler after Defendant allegedly struck him, and therefore, there was no intent, at least on Defendant's part, to cause serious bodily injury to Mr. Butler.

However, according to Defendant's jailhouse phone calls and the testimony of Mr. Lasyone, Defendant struck Mr. Butler at least five times, continuing to do so even after Mr. Butler fell to the floor. We conclude that Defendant's actions support a finding of specific intent to inflict serious bodily injury, even if others struck Mr. Butler after Defendant did so. Accordingly, Defendant's conviction for second degree robbery is affirmed.

Therefore, we conclude that Defendant's fourth and fifth assignments of error lack merit.

**ASSIGNMENT OF ERROR NO. 6:**

In his sixth assignment of error, Defendant contends the jury erred in convicting him of criminal conspiracy to commit second degree robbery and second degree robbery because the evidence only supports convictions for lesser included offenses.[2] Defendant argues that in the event this court finds there was a conspiracy and a robbery, the appropriate convictions should have been for the lesser included offenses of conspiracy to commit simple robbery and simple robbery because there was no evidence Defendant or his co-perpetrators possessed the necessary intent to cause serious bodily injury.

For the reasons set forth with respect to Defendants' assignments of error numbers 4 and 5, we conclude that this assignment of error lacks merit.

---

[2] Defendant also argues his conviction of first degree murder was in error for the same reasons; however, this argument is rendered moot by our conclusion to vacate this conviction in connection with Defendant's first assignment of error.

## ASSIGNMENT OF ERROR NO. 7:

Defendant also argues on appeal that the trial court erred in declining to allow his trial counsel to introduce evidence that a cooperating co-defendant's sentence was was improper under Louisiana law. Specifically, Defendant suggests that it was impermissible for the court to accept a plea bargain from Mr. Lasyone and impose him with a suspended sentence under La.R.S. 14:31, and additionally, it was impermissible to place Mr. Lasyone on probation for any portion of his sentence.

Defendant argues that prior to trial, the trial court initially indicated that counsel would be allowed to question Mr. Lasyone as to the illegal nature of his sentence and that the trial court was willing to take judicial notice of the improper portion of the sentence. However, during questioning of Mr. Lasyone, the trial court informed counsel that he would not be allowed to ask Mr. Lasyone about the illegality of his sentence.

During trial, defense counsel proffered a copy of the manslaughter statute and then stated:

> And, Your Honor, while we were in chambers, we discussed my intention . . . to ask Mr. Lasyone at some point should he testify inconsistently . . . about the plea bargain entered into between he and the State of Louisiana, and I indicated that I intended to introduce a copy of the manslaughter statute and ask that the Court take judicial notice that the sentence he received is actually an illegal sentence . . . under the manslaughter statute. My understanding is the Court is declining to do that so I'm making this a proffer for record purposes.

Defense counsel subsequently questioned Mr. Lasyone about his sentence and how long he had been incarcerated, and he also introduced a copy of Mr. Lasyone's "Plea of Guilty and Waiver of Rights" form.

Defendant argues the trial court's refusal to permit such questioning deprived the jury of critical information as to Mr. Lasyone's credibility and his motivations to commit perjury. Defendant avers: "The fact that that Mr. Lasyone admitted to lying about the facts and circumstances of this case, in conjunction with the fact that he received an improper sentence in return for his testimony was critical information for the jury to be able to weigh his overall credibility."

In response, the State argues that Mr. Lasyone was not qualified to answer questions regarding the legality of his sentence.

Louisiana Code of Evidence Article 609.1 addresses attacking a witness's credibility by submitting evidence of conviction in a criminal case:

**A. General criminal rule.** In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.

**B. Convictions.** Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.

**C. Details of convictions.** Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:

(1) When the witness has denied the conviction or denied recollection thereof;

(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or

(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.

**D. Effect of pending post-conviction relief procedures.** The pendency of an appeal or other post-conviction relief procedures does not render the conviction inadmissible, but may be introduced as bearing upon the weight to be given the evidence of the conviction.

**E. Effect of pardon or annulment.** When a pardon or annulment, based upon a finding of innocence, has been granted, evidence of that conviction is not admissible to attack the credibility of the witness.

**F. Juvenile adjudications.** Evidence of juvenile adjudications of delinquency is generally not admissible under this Article, except for use in proceedings brought pursuant to the habitual offender law, R.S. 15:529.1.

We find that the evidence regarding the legality of Mr. Lasyone's sentence is not admissible to attack Mr. Lasyone's credibility under La.Code Crim.P. art. 609.1.

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." La.Code Evid. art. 602.

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:

(1) Rationally based on the perception of the witness; and

(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

La.Code Evid. art. 701. Moreover, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible." La.Code Evid. art. 402.

Mr. Lasyone testified regarding the sentence he received. However, Mr. Lasyone, who was seventeen years old and had an eleventh-grade education at the time he entered his plea, was not capable of testifying regarding the legality of his sentence. Furthermore, whether his sentence was illegally lenient was irrelevant.

25

Thus, testimony regarding the legality of Lasyone's sentence was properly excluded by the trial court.

For these reasons, we conclude that Defendant's seventh assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 8:

In his eighth assignment of error, Defendant contends that the trial court erred in imposing an unconstitutionally excessive sentence of thirty years for the offense of second degree robbery.

At the sentencing hearing, the parties stipulated that Defendant's date of birth was June 11, 1999, and the offense occurred on August 10, 2016. In discussing the sentencing range for second degree robbery, the trial court stated:

> The range for second degree robbery is three to forty years. That too is designated as a crime of violence. The sentencing ranges and some jurisprudence that the Court has found and some research in preparation for sentencing today: *State versus Senegal*, . . . 08-1305, Louisiana Appeals 3rd Circuit, four, April the 1st, 2019, that's an unpublished opinion. The defendant was given a thirty year sentence for second degree robbery. The facts: the defendant hid in the storeroom of a dollar general. The store closed. Employees were cleaning, closing the store. Defendant came out of the storeroom and viciously attacked employee and took the money. The holding was that the conviction and sentence were affirmed. *State v. Guillory*, 10-1175, Louisiana Appeals Third Circuit, April 6th of 2011. That's found in -- it's cited in 61 So.3rd 801 (2011). It's a forty year sentence for second degree robbery which is the max that could be imposed. The facts: victim headed home after work. Took a bus. The bus dropped her off near a wooded area. Defendant approached victim, asked for bus fare. As victim reached inside her purse, defendant punched victim, dragged her into the woods, tried to fight, but the victim *(sic)* overpowered her. Defendant continued to punch her in the face. Defendant also choked her. Victim played dead. Defendant finally left after taking victim's purse. Obviously, the victim, . . . sustained very serious injuries. The holding was that the sentence was affirmed and not held excessive. *State v. Allen*, 05-1622, Louisiana Appeals, First Circuit, March 29, 2006. It's cited in 934 So.2d 146. It's a twenty-five year sentence that the Court gave for second degree robbery. The facts: the victim walking home from work. The car was driven by the defendant and two others.

Defendants were passengers. They stopped, asked the victim if he wanted a ride. Victim said no. Car drove off. Car drove back, asked again. Victim said yes, and got in. Passenger then struck victim in the head. Victim pulled . . . the car pulled into a car wash. Defendant pulled victim out of the car. Passengers kicked victim in the face and ribs. . . . Defendant and passengers took off with the wallet and personal items and, obviously, the victim . . . had some serious injuries. The holding that the sentence was affirmed. It was not excessive. . . . So that's the range and that's the jurisprudence that the Court found . . . on second degree robbery.

Defendant was then questioned by the trial court. Defendant indicated he was twenty years old, had a tenth-grade education, had previously worked at Great American Cookies and Dairy Queen, had never been married, had no dependents, and had never served in the military. Defendant was also asked the following:

BY THE COURT:

> Do you have a substance abuse issue or mental health issue or have -- or have you ever sought treatment for any of those issues before?

BY MR. BLADE:

> I have before in the past.

BY THE COURT:

> For which?

BY MR. BLADE:
> Uh, for both.

The judge noted this was Defendant's first offense as an adult, stating:

> So he has -- post arrest for these offenses, he has picked up some charges, but . . . he really doesn't have something prior for the Court to really go into and plus . . . the top end of the charge, the murder one, is a mandatory sentencing, so that's also a little different when the Court goes to sentence him.

The State presented no aggravating factors for consideration by the court. Defense counsel noted Defendant's youth, the lack of intent to plan and stage a homicide, and family support for Defendant. The trial court specifically took note

27

of Defendant's youth, the fact that Defendant had strong family support, and the presence of Defendant's family at court proceedings.

Defendant personally apologized for the pain he caused. Thereafter, Crystal Smith gave a victim impact statement, noting Mr. Butler's family was "ready to put it behind us and move forward." She also stated that Mr. Butler was killed on his son's birthday, and Michael, Jr., would always remember that. She then asked that justice be served.

The judge recited the following facts from the case:

> [T]he Defendant manifested deliberate cruelty to the victim by striking Mr. Butler until he was nearly unconscious. Defendant's actions were heinous and cowardly, again striking Mr. Butler until he was nearly unconscious, running off with his friends after beating Mr. Butler with no regard to his injuries. The victim's injuries were extremely severe and, due to those injuries, he died. Specifically, Dr. Tape . . . was the forensic . . . physician who had examined Mr. Butler. He had testified, and I'm glossing this over, externally Mr. Butler had cuts to his inner lips, a hemorrhage in the white of his left eye, injuries/bruising to his right armpit and lower left and the right side of his abdomen. Internally, Mr. Butler sustained scalp hemorrhages, which in layman terms, are bruises to the soft tissue of the head. The subarachnoid and subdural hemorrhages, and it's the Court's appreciation for Dr. Tape's testimony, that the subachronoid [sic] is a lower level in the brain than the subdural hemorrhages in the subdural. There was brain swelling which caused pressure on the skull.

The trial judge subsequently sentenced Defendant to serve thirty years at hard labor for second degree robbery, with the sentence to run concurrently with the sentences imposed for first degree murder and conspiracy to commit second degree robbery.

Defendant contends the trial court imposed a sentence that was seventy-five percent of the maximum without reviewing any applicable aggravating or mitigating factors. Defendant argues the trial should have considered his age and points out that he turned seventeen two months before he committed the offenses.

28

He also asserts that due to his age, it was likely that he did not have the maturity to appreciate that his actions might cause death or great bodily harm. Moreover, the trial court should have considered that Defendant did not contemplate that his conduct would cause or threaten serious bodily harm. Defendant further asserts that the trial court should have considered his alcohol and drug use on the night the offenses were committed. He states, "The combination of [his] age and that the teens consumed alcohol and drugs prior to the offense creates a perfect storm to lack an appreciation of potential consequences." Defendant contends it is likely these mitigating factors were considered in the plea offers to co-defendants Mr. Lasyone and Ms. Daniels. Given the mitigating factors submitted and the trial court's failure to comply with La.Code Crim.P. art. 894.1, Defendant contends his sentence for second degree robbery is excessive.

At the conclusion of the sentencing hearing, defense counsel entered a general objection to the sentences imposed for second degree robbery and conspiracy to commit second degree robbery. In his "Motion for Reconsideration of Sentence," Defendant asserted:

> Mover shows that all 3 of the sentences in the above entitled criminal docket numbers are unconstitutionally excessive considering Mr. Blade's age at the time of offense, his lack of criminal record prior to the commission of this offense, and on all other applicable mitigating factors contained in Louisiana Code of Criminal Procedure Article 894.1 et seq.

Defense counsel's general objection to the sentences imposed did not preserve any issues for appellate review. *State v. Barling*, 00-1241, 00-1591 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331. Therefore, we must look to Defendant's Motion for Reconsideration of Sentence.

Louisiana Code of Criminal Procedure Article 881.1 provides the mechanism for preserving the review of a sentence by motion to reconsider sentence:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

In *State v. Latique*, 18-622, p. 13 (La.App. 3 Cir. 2/20/19), 265 So.3d 93, 104, *writ denied*, 19-707 (La. 10/8/19), 280 So.3d 593, the defendant's motion for reconsideration alleged that the trial court did not take into account "'all of the mitigating factors available'" but did not specify which factor or factors in mitigation were not considered. This, court found the defendant's argument constituted a bare claim of excessiveness.

We conclude that Defendant's statement regarding "all other applicable mitigating factors contained in Louisiana Code of Criminal Procedure Article 894.1" did not preserve any issues for review. The only issue raised both in Defendant's motion for reconsideration and in his brief to this court were his age and the excessiveness of his sentences. Accordingly, Defendant is precluded from raising the other arguments in brief to this court for the first time on appeal. However, we will proceed with a review of Defendant's claim of excessiveness in light of his age.

> Louisiana courts have laid out the following guidelines with regard to reviewing claims of excessive sentence:

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00), 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that

sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

In *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, *and writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626, this court adopted the fifth circuit's three factor test from *State v. Lisotta*, 98-648, p. 4 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, 58, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, which established that an appellate court should consider "the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes[.]"

*State v. Clark*, 19-136, pp. 3-4 (La.App. 3 Cir. 10/2/19), 280 So.3d 673, 676-77 (alterations in original).

Prior to imposing the sentence, the trial court noted Defendant's age and lack of criminal history. The judge also thoroughly discussed the seriousness of the offense and looked to sentences imposed in other cases involving second degree robbery. In *State v. Sinegal*, 08-1305 (La.App. 3 Cir. 4/1/09) (unpublished opinion), the defendant was sentenced to thirty years at hard labor for second degree robbery. However, this court did not review that sentence for excessiveness. In *State v. Guillory*, 10-1175 (La.App. 3 Cir. 4/6/11), 61 So.3d 801, this court affirmed the defendant's forty year sentence for second degree robbery. However, neither the defendant's age nor offender status were revealed in the

opinion. In *State v. Allen*, 05-1622 (La.App. 1 Cir. 3/29/06), 934 So.2d 146, the defendant had three prior felony convictions. Thus, the court affirmed his twenty-five year sentence for second degree robbery.

The following cases also affirm sentences for second degree robbery. In *State v. Brown*, 51,352 (La.App. 2 Cir. 5/2/17), 223 So.3d 88, *writ denied*, 17-1154 (La. 5/11/18), 241 So.3d 1013, the victim was knocked unconscious and suffered a broken jaw, broken cheekbone and eye socket, and a concussion. The forty-four-year-old defendant had seven prior convictions and was sentenced to eighteen years. *State v. Jackson*, 48,534 (La.App. 2 Cir. 1/15/14), 130 So.3d 993, involved a struggle between the victim and the defendant as he tried to take the victim's purse. The victim lost her two front teeth and suffered injuries to her hip and arm. The defendant was thirty-nine years old. He had one prior felony conviction, and his criminal history report showed seventeen entries. His sentence of twenty years was affirmed. In *State v. Martin*, 48,045 (La.App. 2 Cir. 5/15/13), 115 So.3d 750, the thirty-five year old defendant shot the victim in the leg. The defendant had four prior felonies and was sentenced to twenty-five years. The victim in *State v. Allen*, 12-36 (La.App. 3 Cir. 6/6/12) (unpublished opinion), received facial fractures that required reconstructive surgery. The twenty-one-year-old defendant, who had been placed on probation for simple burglary three months earlier, was sentenced to thirty years. In *State v. Stephan*, 11-648 (La.App. 3 Cir. 12/7/11), 79 So.3d 1175, the sixty-year-old defendant, who was a seventh felony offender, was sentenced to thirty years for shooting the victim in the back of the head.

We find that the trial court clearly contemplated the sentence to be imposed in light of the facts of the case and Defendant's age and offender status. The overwhelming majority of cases cited in this discussion involve defendants with

33

prior convictions. However, none of the cases involve injuries that resulted in the death of the victim.

"On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion." *State v. Williams*, 03-3514, p. 14 (La. 12/13/04), 893 So.2d 7, 16-17. Based on the facts of this case, we cannot say the trial court abused its discretion in imposing a sentence of thirty years for second degree robbery. Defendant's eighth assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 9:

In his ninth assignment of error, Defendant contends the trial court erred in imposing an unconstitutionally excessive sentence of fifteen years for the offense of conspiracy to commit second degree robbery.

At the sentencing hearing, the trial court discussed the sentencing range for conspiracy to commit second degree robbery, stating:

> Conspiracy is found in the Revised Statute 14:26. Criminal conspiracy, whoever's a party to criminal conspiracy to commit any other crime shall be fined or imprisoned, or both, in the same matter [sic] as for the offense contemplated by conspirators, but such fine or imprisonment shall not exceed one-half of the largest fine or one-half of the longest of imprisonment prescribed for such offenses or both. . . . So essentially that would -- the range would run from one and half years to twenty years.

The trial court subsequently sentenced Defendant: "[A]s a result of being sentenced to thirty years on the second degree robbery, I'm sentencing you to fifteen years at hard labor because that would be half of the thirty year sentence." The sentence was to run concurrently with the other sentences imposed.

As noted by the trial court, conspiracy to commit second degree robbery is punishable by imprisonment not to exceed one-half the longest term of

imprisonment prescribed for second degree robbery. La.R.S. 14:26(D). The sentencing range for second degree robbery is three to forty years. La.R.S. 14:64.4(B).

In *State v. Moore*, 96-1835, p. 4 (La.App. 1 Cir. 6/20/97), 696 So.2d 657, 658-59, the first circuit addressed the minimum sentence for conspiracy as follows:

> While the issue of whether there is a minimum sentence for the crime of conspiracy appears to be res nova, the critical language of the statute involving conspiracy is the same as that of the attempt statute; and the supreme court has decided that there is no minimum sentence for the crime of attempt. In the same manner, principles of leniency would mandate that the statute covering conspiracy be strictly construed. *See State v. Callahan*, 95–1331 at p. 1; 671 So.2d at 903. Additionally, in *State v. Lobato*, 603 So.2d 739, 751 (La.1992), the supreme court noted that the penalty for conspiracy to possess marijuana with intent to distribute was a sentencing range from zero to five years with a maximum fine of $2,500 at the time of the offense. Therefore, we determine that there is no minimum sentence for the offense of conspiracy to commit first degree robbery.

In *State v. Lawson*, 43,655 (La.App. 2 Cir. 10/22/08), 997 So.2d 122, the second circuit stated the sentencing range for conspiracy to commit armed robbery was imprisonment at hard labor for up to forty-nine and a half years without benefits. In a footnote, the court stated: "There is no express statutory minimum sentence for being convicted of an attempt. *See State v. Callahan*, 95–1331 (La. 3/29/96), 671 So.2d 903." *Id.* at 124 n.2. The applicable section of the attempt statute, La.R.S. 14:27(D)(3), states: "In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both."

Based on the cases cited herein and the language of La.R.S. 14:26(D), the sentencing range for conspiracy to commit second degree robbery is zero to twenty years. However, Defendant did not object at the sentencing hearing to the trial

court's recitation of the incorrect sentencing range and makes no complaint to this court regarding the trial court's statements.

Defendant's argument as to the excessiveness of his sentence for conspiracy to commit second degree robbery is the same as that concerning his sentence for second degree robbery. Thus, we will not repeat that discussion in this assignment of error.

For the reasons set forth herein, staff suggests Defendant's ninth assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 10:

In his tenth assignment of error, Defendant contends the jury erred in convicting him because a juror engaged in misconduct during jury selection by failing to disclose information regarding his prior working relationship with the grandmother of Defendant as well as his daughter's relationship with Defendant's sister.

In brief to this court, Defendant asserts that Mr. Boss served on the jury. After trial, it was discovered that Defendant's grandmother, Irene Roy, worked at Rapides Women's and Children's Hospital, where she and Mr. Boss "work[ed] together at various points assisting with patients." Ms. Roy was present during trial, and it is incredulous to believe that Mr. Boss did not see Ms. Roy during trial. Had this information been disclosed during jury selection, further questioning would have been performed in an effort to determine whether Mr. Boss was biased.

Defendant further contends that Mr. Boss's daughter was friends with Defendant's half-sister and they were on the same cheerleading squad. This information was also not disclosed during jury selection. "Based on information and belief the daughter of Mr. Boss engaged [in] some level of conversation with

the half-sister of Mr. Blade during trial. Also based upon information and belied [sic] Mr. Boss communicated with his daughter about the trial." This communication was in direct violation of the court instruction not to discuss the case with anyone. Had this information been disclosed during jury selection, Mr. Boss would have been questioned as to his bias or ability to be fair and impartial.

Uniform Rules—Courts of Appeal, Rule 2-12.4 provides, in part:

> A. The brief of the appellant shall contain, under appropriate headings and in the order indicated:
>
> . . . .
>
> (7) a statement of facts relevant to the assignments of error and issues for review, with references to the specific page numbers of the record;
>
> . . . .
>
> (9) the argument, which shall contain:
>
> (a) appellant's contentions, with reference to the specific page numbers of the record and citations to the authorities on which the appellant relies,
>
> (b) for each assignment of error and issue for review, a concise statement of the applicable standard of review, which may appear in the discussion or under a separate heading placed before the discussion[.]

Defendant fails to set forth the page numbers reflecting jury selection and Mr. Boss's service on the jury. Moreover, Defendant couches his assigned error as an error committed by the jury. However, he references testimony taken at a hearing on a post-trial motion. Defendant does not reference the title of that motion or provide the record page numbers for that motion or any ruling thereon. Furthermore, he does not present any argument as to why the jury's decision or any ruling on a post-trial motion was erroneous or include the standard of review or any discussion of jurisprudence applicable to the issue presented.

In *State v. Thacker*, 13-516, p. 29 (La.App. 3 Cir. 1/28/15), 157 So.3d 798, 818, the defendant alleged the trial court abused its discretion:

> when it "refused to allow defense counsel's witness to testify, and who's [sic] testimony attest's [sic] that prior to the alleged offense, several reliable persons heard the alleged victim make a threat that she would falsely accuse the defendant of sexual misconduct with her." The Defendant fails to reference a ruling by the trial court denying any witness the right to testify, to set forth the name of the witness to which he is referring, or to reference anything in the record that sets forth the basis for his claim. For these reasons, this court will not consider the Defendant's assignment of error. *See State v. Lewis*, 09–846 (La.App. 3 Cir. 4/7/10), 33 So.3d 1046, *writ denied*, 10–967 (La.11/24/10), 50 So.3d 825; Uniform Rules—Courts of Appeal, Rule 2–12.4.

In *State v. Robinson*, 11-12, p. 38 (La.App. 5 Cir. 12/29/11), 87 So.3d 881, 908-09, *writ denied*, 12-279 (La. 6/15/12), 90 So.3d 1059, the fifth circuit stated:

> While defendant's two paragraph assignment provides legal citation pertaining to the purpose of pretrial discovery, defendant does not specify which rules of discovery were violated, nor does he provide, with citation to the record, the law concerning mistrials or motions for new trials, or the facts pertaining to the alleged discovery violation upon which he contends a mistrial and/or a motion for new trial should have been granted. Specifically, the defendant asserts the following argument in his brief:
>
> > Here, the State did violate the rules of discovery as acknowledged by the Court itself. Furthermore, the defendant at trial was quite able to demonstrate significant prejudice to his case. Here, the defendant by the State's action was lulled into a misapprehension of the actual strength of the State's case-in-chief. The Court erred in both the denial of a New Trial and a Motion for Mistrial.
>
> Under Rule 2–12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. *State v. Tranchant*, 10–459, p. 4 (La.App. 5 Cir. 11/23/10), 54 So.3d 730, *writ denied*, 10–2821 ([La.] 4/29/11), 62 So.3d 108. Restating an assigned error in brief without argument or citation of authority does not constitute briefing. *State v. Lauff*, 06–717, p. 9 (La.App. 5 Cir. 2/13/07), 953 So.2d 813, 819.

Based on Uniform Rules—Courts of Appeal, Rule 2-12.4 and the cases cited herein, we decline to consider Defendant's tenth assignment of error.

## DECREE

For the reasons set forth above, Defendant's convictions and sentences for second degree robbery and conspiracy to commit second degree robbery are hereby affirmed. Defendant's conviction for first degree murder is hereby be vacated and the matter remanded for a new trial.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2–16.3, Uniform Rules, Courts of Appeal**.**